UPPER PECOS ASSOCIATION, a New Mexico non-profit corporation, individually and on behalf of its members, Plaintiff,

v.

Maurice H. STANS, individually and as Secretary of Commerce of the United States, et al., Defendants.

Civ. No. 8799.

United States District Court,
D. New Mexico.

June 1, 1971.

James B. Alley, Jr., Mitchell, Mitchell & Alley, Santa Fe, New Mexico, for plaintiff.

Victor Ortega, U. S. Atty., Mark B. Thompson, III, Asst. U. S. Atty., Albuquerque, N. M., for defendants.

## MEMORANDUM OPINION AND ORDER

MECHEM, District Judge.

Plaintiff has brought this action to challenge the legality of a grant of funds made by the Economic Development Administration of the Department of Commerce equal to 80% of the estimated cost of constructing a road in the Elk Mountain area of San Miguel County in north-

ern New Mexico, known as the "Elk Mountain Road Project".

In November 1968, the Board of County Commissioners of San Miguel County acting through the North Central New Mexico Economic Development District applied to the Economic Development Administration for this grant. Pursuant to its authority under the Public Works and Economic Development Act of 1965 (P.L. 89–136) to grant funds for meritorious projects in economically depressed areas, the E.D.A. made an offer to grant to the County the sum of $3,795,200 on October 21, 1970. The County accepted that offer on October 30, 1970.

The project will include 26 miles of new road and the surfacing of 7.5 miles of existing road which now terminates at Johnson Mesa and will traverse an area of the Santa Fe National Forest near the summit of Elk Mountain.

Plaintiff asserts that defendants have failed to comply with the National Environmental Policy Act of 1969 (42 U.S.C. § 4321 et seq.) effective January 1, 1970, Executive Order No. 11514 issued pursuant thereto (35 Fed.Reg. 4247 March 5, 1970), the Interim and Final Guidelines of the Council on Environmental Quality [1] and the Administrative Order of the Secretary of Commerce relating to environmental statements [2] because the E.D.A. did not consider an environmental impact statement concerning this project before making its offer of grant.

Jurisdiction is based primarily on the Administrative Procedure Act (5 U.S.C. § 701 et seq.), in particular § 702 which provides for judicial review of agency action when the complainant has been adversely affected thereby within the meaning of a relevant statute. Plaintiff contends that the National Environmental Policy Act of 1969 is the relevant statute.

It is defendants' position that the National Environmental Policy Act of 1969 is a declaration of national environmental policy and creates no sanctions. Accordingly, it contends that the N.E.P.A. is not a "relevant statute" within the meaning of § 702. In Environmental Defense Fund Incorporated v. Hardin, 428 F.2d 1093 (D.D.C. 1970), the test for standing under the Administrative Procedure Act (relating to whether a person is aggrieved by agency action within the meaning of a relevant statute) was held tantamount to the requirement that complainant's interests fall within the zone of interests sought to be protected by the statute. That case held that five environmental protection organizations had standing to challenge the Secretary of Agriculture's failure to act in response to their petition seeking to restrain the use of DDT.

Other recent environmental decisions have held that conservation organizations are aggrieved persons under § 702 and, as such, have standing to sue. Citizens Committee for Hudson Valley v. Volpe, 425 F.2d 97 (2nd Cir. 1970) cert. denied, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970) Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F.Supp. 238 (M.D.Pa. 1971) and Environmental Defense Fund v. Corps of Engineers of the United States Army, 324 F.Supp. 878 (D. D.C. 1971).

In this case, the stated purpose of plaintiff association is to preserve and improve the quality of the environment in the Upper Pecos Valley. A majority of its members are residents and property owners in the area and as such, have a bona fide interest, economic and otherwise, which plaintiff asserts will be adversely affected. The interests which plaintiff seeks to protect are within the zone of interests to be protected and regulated by the Administrative Procedure Act. Association of Data Processing Service Organization v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). I conclude that plaintiff does have stand-

---

1. Interim Guidelines, 35 Fed.Reg. 7390, May 12, 1970 Final Guidelines, 36 Fed. Reg. 7724, April 23, 1971.

2. Department Administrative Order 216–6, Para. 02, Section 3, 35 Fed.Reg. 14167, Sept. 5, 1970.

ing to maintain this suit under the Administrative Procedure Act.

Section 102(2) (C) of the National Environmental Policy Act of 1969 (42 U.S.C. § 4332) directs "to the fullest extent possible" that all federal agencies shall include an environmental impact statement in every recommendation or report on proposals for legislation and other major action significantly affecting the quality of human environment.

■ Plaintiff asserts that the granting of funds by the Economic Development Administration to San Miguel County was "a major federal action" within the meaning of Section 102(2) (C) and Section 5 of the Interim Guidelines of the Council of Environmental Quality[3] and since an environmental impact statement was not prepared prior to E.D.A. making the offer of grant, the grant is illegal and disbursement of the funds authorized thereunder should be enjoined.

Defendants correctly state that the National Environmental Policy Act in itself creates no sanctions for failure of a federal agency to comply with its provisions and some courts have taken this position. In Bucklein v. Volpe, 1 Environmental Law Rep. 20043 (N.D.Cal. 1970), a taxpayer's class action under the National Environmental Policy Act to enjoin the Secretary of Transportation from committing emergency relief funds for road repair, the District Court for the Northern District of California dismissed the complaint stating that the N.E.P.A. was only a general command to federal officials to use all practical means to enhance the environment.

Where an unincorporated association sought to enjoin the construction of a penal facility in an historic area of Virginia, the National Environmental Policy Act provision that laws of the United States shall be administered in accordance with its policies "to the fullest extent possible" was held to be discretionary. Since the N.E.P.A. conflicted with a section of the non-discretionary Omnibus Crime Control and Safe Streets Act of 1968, (§ 303, 42 U.S. C. § 3733), the District Court for the Eastern District of Virginia held that the non-discretionary statute must prevail and declined to enjoin construction of the penal facility. Ely v. Velde, 321 F.Supp. 1088 (E.D.Va.1971).

Other district courts however have viewed the National Environmental Policy Act as, at the least, an environmental full disclosure law and have granted preliminary injunctive relief when a federal agency has failed to comply with its requirements.

In Environmental Defense Fund, Inc. v. Corps of Engineers of the United States Army, 325 F.Supp. 749 (E.D.Ark. 1970) 1 Environmental Law Rep. 20130, the Corps of Engineers was enjoined from proceeding with Gillham Dam project when the environmental impact statement was found to be deficient and inadequate. The Corps of Engineers was similarly enjoined from proceeding with channel clearing on the Gila River pending compliance with the N.E.P.A., Executive Order No. 11514, and the Guidelines of the Council on Environmental Quality. Sierra Club v. Laird, (D.Ariz.1970) 1 Environmental Law Rep. 20085. In West Virginia Highlands v. Island Creek Coal Co., 441 F.2d 232 (4th Cir. 1971), the Court of Appeals affirmed the granting of interlocutory injunctive relief against the Forest Supervisor and coal company preventing timber cutting and construction of access roads by the coal company for test drilling in the Monongahela National Forest.

These cases challenged the actions of a single federal agency. The case at bar is distinguishable. A history of the

---

3. Section 5 provides in part:
"The following criteria will be employed by agencies in deciding whether a proposed action requires the preparation of an environmental statement:

(a) 'Actions' include but are not limited to: (ii) Projects and continuing activities,—Supported in whole or in part through Federal contracts, grants, subsidies, loans or other forms of funding assistance;—".

project now designated as the Elk Mountain Road Project indicates that the Forest Service has played a significant role in its development.

Testimony reveals that in 1963, the Regional Forester approved the project, then known as Rio Pecos Way, as a Forest Service Road for scenic road purposes along the route now planned as Elk Mountain Road. Seven and one-half miles of the road terminating at Johnson Mesa were actually constructed by the Forest Service. A preliminary survey has been made by Forest Service engineers of all except approximately eight miles of the area.

Roy C. Gandy, Deputy Forest Supervisor of the Santa Fe National Forest testified that it has been the intention of the Forest Service to complete this road when sufficient funds became available, and that while its designation as a state highway and funding by E.D.A. would considerably accelerate its construction, the road was not entirely dependent on the E.D.A. grant. Granting of the right of way easement necessary to permit the use of National Forest Lands for highway purposes is still dependent upon the approval by the Forest Service of the location, construction plans and specifications.

The original and substantial interest of the Forest Service in this project present a situation wherein two federal agencies are involved, one of which, the Forest Service, has had a continuing commitment to a course of action to build the road and the other, the Economic Development Administration, has become responsible for its funding.

The guidelines of the Council on Environmental Quality state that in situations where various federal agencies may make separate decisions having a cumulative environmental impact, such as where several agencies individually make decisions about partial aspects of a major action, the lead agency should prepare an environmental statement if it is reasonable to anticipate a cumulatively significant impact on the environment from the federal action. (Final Guidelines, 36 Fed.Reg. 7724, April 23, 1971).

The Forest Service has prepared and issued on February 9, 1971 a detailed environmental impact statement on the Elk Mountain Road Project and will issue a final environmental impact statement when the engineering studies now in progress are concluded. Testimony has indicated that the Forest Service will not grant its right of way easement permitting actual construction of the road before considering this environmental impact statement.

Under these circumstances, I conclude that the Forest Service and not the Economic Development Administration is the lead agency within the meaning of the Guidelines of the Council on Environmental Quality and that the directives of the National Environmental Policy Act and the recommendations issued pursuant thereto have been satisfied to date.

Accordingly,

It is ordered and adjudged that plaintiff's complaint and this cause of action be and the same hereby is dismissed with prejudice.