**UPPER PECOS ASSOCIATION, a New Mexico non-profit corporation, individually and on behalf of its members, Plaintiff-Appellant,**

v.

**Maurice H. STANS, individually and as Secretary of Commerce of the United States, et al., Defendants-Appellees.**

No. 71-1411.

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1971.

Murrah, Circuit Judge, dissented and filed opinion.

James B. Alley, Jr., Santa Fe, N. M., for appellant.

Peter R. Steenland, Atty., Department of Justice, Washington, D. C. (Shiro Kashiwa, Asst. Atty. Gen., Victor R. Ortega, U. S. Atty., Mark B. Thompson, III, Asst. U. S. Atty., Albuquerque, N. M., Edmund B. Clark and George R. Hyde, Attys., Department of Justice, Washington, D. C., on the brief), for appellees.

Before PHILLIPS, MURRAH and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant instituted this action in the United States District Court for the District of New Mexico on January 25, 1971, challenging the legality of a grant made by appellees through the Economic Development Administration of the Department of Commerce (the E.D.A.) equal to 80% of the estimated cost of constructing a road in the Elk Mountain area of San Miguel County, New Mexi-

co. A declaratory judgment that the grant was illegal and injunctive and other relief designed to prevent disbursement of the funds granted were sought. The district court denied plaintiff's motion for preliminary injunctive relief, and also denied defendants' motion to dismiss or in the alternative for summary judgment. A non-jury trial on the merits followed; plaintiff's complaint was dismissed with prejudice, 328 F. Supp. 332. Plaintiff's motion for injunctive relief pending appeal was denied.

On November 27, 1968, the Board of County Commissioners of San Miguel County, New Mexico, acting through the North Central New Mexico Economic Development District, applied for a grant of funds from the E.D.A. equal to 80% of the total estimated cost of constructing a proposed road in the Elk Mountain area of San Miguel County. Pursuant to its authority under the Public Works and Economic Development Act of 1965 [1] to grant funds for meritorious projects in economically depressed areas, the E.D.A. made an offer to grant to the county the sum of $3,795,200 on October 21, 1970. The county accepted that offer on October 30, 1970. The project will include 26 miles of new road and the surfacing of 7.5 miles of existing road which now terminates at Johnson Mesa, and will traverse an area of the Santa Fe National Forest near the summit of Elk Mountain.

■ The jurisdictional question is not raised on appeal. The district court found jurisdiction, based primarily on the Administrative Procedure Act.[2] The stated purpose of plaintiff organization is to preserve and improve the quality of environment in the Upper Pecos Valley. The majority of the members are property owners in the area, asserting interests, economic and otherwise, which will be adversely affected. The interests are within the zone protected by the A.P.A.[3]

Appellant asserts that the granting of funds by the E.D.A. to San Miguel County was "a major federal action" within the meaning of § 102(2) (C) of the National Environmental Policy Act,[4] and § 5 of the Interim Guidelines of the Council of Environmental Quality.[5] As an environmental impact statement was not prepared prior to the E.D.A.'s offer of grant, the grant is illegal and disbursement of the funds authorized thereunder should be enjoined. Appellee argues that the provisions of the National Environmental Policy Act, as implemented by the Guidelines of the Council on Environmental Quality,[6] have been complied with by the Forest Service, which is the lead agency. The issues thus presented are which is the proper agency to prepare the environmental impact statement, and at what point in time must such statement be available.

■ A reading of the record reveals that the parties are in agreement that the proposed road is "a major federal action" within the meaning of § 102(2) (C) of the N.E.P.A. Furthermore, both parties agree that the environmental impact statement is to be prepared by the agency with overall responsibility for

1. 42 U.S.C. § 3121 et seq.

2. 5 U.S.C. § 701 et seq.

3. Ass'n of Data Processing Serv. Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), holding that the interests protected may be recreational and conservationist as well; Environmental Defense Fund, Inc. v. Hardin, 428 F.2d 1093 (D.C.Cir. 1970), wherein the court held that environmental protection organizations have standing to sue. See also Citizens Comm. for Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970), cert. denied 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970); Environmental Defense Fund, Inc. v. Corps of Eng. of U.S. Army, 324 F.Supp. 878 (D.D.C.1971); and Pa. Environmental Council, Inc. v. Bartlett, 315 F. Supp. 238 (M.D.Pa.1970).

4. 42 U.S.C. § 4321 et seq.

5. 35 Fed.Reg. 7390 (1970).

6. 35 Fed.Reg. 7390 (1970) and 36 Fed. Reg. 7724 (1971).

the project.[7] There is no dispute that the Forest Service has the continuing commitment to the course of action to build the road and the expertise to prepare the statement, whereas a requirement that the E.D.A. do so would be unduly burdensome to that agency. The trial court found that the Forest Service was the lead agency, and thereby had the responsibility of preparing the environmental impact statement. The findings of the trial court will not be disturbed on review unless unsupported by substantial evidence or clearly erroneous. Northern Natural Gas Co. v. Grounds, 441 F.2d 704 (10th Cir. 1971). We hold the trial court's finding that the Forest Service is the lead agency with responsibility for preparation of the environmental impact statement to be supported by substantial evidence; this finding is affirmed.

■ The second question presented for solution is at what point in time must the environmental impact statement be available. Appellant argues that preparation of the environmental impact statement after the offer of grant has been made is a meaningless gesture. Appellee contends that preparation and submission by the Forest Service of its preliminary environmental impact statement on February 9, 1971, fully meets the requirements of the N. E.P.A. This Court has recently dealt with the requirements of the N.E.P.A. The mandates of the N.E.P.A. pertain to procedure and not to substance, that is, decision-making in a given agency is required to meet certain procedural standards, yet the agency is left in control of the substantive aspects of the decision.[8] The N.E.P.A. creates no substantive rights in citizens to safe, healthful, productive and culturally pleasing surroundings.[9] Instead, the responsible agency is required to take these factors into account at some point before commencement of the project.

■ Case law on the question of the point in time at which the environmental impact statement must be available is understandably sparse. The N.E.P.A. became effective only on January 1, 1970. The Act was applied to projects then existent. In such situations, the requirements of the N.E.P.A. were satisfied if the environmental impact statement was prepared before the contract in question was executed; the project could be evaluated openmindedly if work had not commenced.[10] A recent decision in the United States District Court for the District of Alaska presents an analogous fact situation to the instant case. Pursuant to a contract for harvesting of certain timber in the North Tongass National Forest, a mill site was to be granted the successful bidder. A blue-ribbon panel of conservationists selected from universities in the United States and Canada had supervised the selection of the mill site to insure minimization of environmental impact by comprehensive site planning; the paper company involved had spent substantial sums to this end. An environmental impact statement had been submitted the day before the Forest Service issued its "Conditions of Use" pending the patent of the site to the paper company. The court found compliance with the N.E.P.A. Sierra Club v. Hardin, 325 F.Supp. 99 (D.Alaska 1971). The point at which the project had become more than a mere proposition—here the letting of the contract for the harvesting of timber and the selection of the mill site, in the instant case the offer of grant by the E.D.A.—had been passed before the

7. Final Guidelines of the Council on Environmental Quality, 36 Fed.Reg. 7724 (1971); Calvert Cliffs' Coordinating Comm., Inc. v. United States Atomic Energy Commission, 449 F.2d 1109 (D.C. Cir. 1971).

8. Nat'l Helium Corp. v. Morton, (10th Cir. 1971).

9. Environmental Defense Fund, Inc. v. Corps of Eng. of U.S. Army, 325 F. Supp. 749 (E.D.Ark.1971).

10. Environmental Defense Fund, Inc. v. Corps of Eng. of U.S. Army, 325 F. Supp. 728, 325 F.Supp. 749 (E.D.Ark. 1970, 1971).

environmental impact statement was prepared. Certainly the project must be of sufficient definiteness before an evaluation of its environmental impact can be made and alternatives proposed.

Preparation and submission of the environmental impact statement at the point in time selected by the Forest Service is not a meaningless gesture, as appellant argues. The Forest Service must still approve the location and the construction plans and specifications of the proposed road before a grant of right-of-way easement necessary to permit the use of National Forest Lands for highway purposes is possible. The final environmental impact statement will provide the basis on which the Forest Service will decide on the issuance of the right-of-way easement. The trial court thus has found that the directives of the N.E.P.A. and the recommendations issued pursuant thereto have been satisfied to date. This Court is bound to uphold such finding unless unsupported by substantial evidence or clearly erroneous. Northern Natural Gas Co. v. Grounds, *supra*. The finding of compliance with the N.E.P.A. to date is supported by substantial evidence, and is not clearly erroneous.

Affirmed.

MURRAH, Circuit Judge (dissenting):

It is agreed that both the E.D.A. action in making the grant of funds and the Forest Service action in granting the right-of-way easement were "major Federal actions" as that term is used in the N.E.P.A. We also agree that the Forest Service was the "lead agency" with the duty of preparing the environmental impact statement.

However, after a close reading of the statute and its implementing regulations, it is my opinion that they clearly express the intention that "compliance to the 'fullest' possible extent would seem to demand that environmental issues be considered at every important stage in the decision making process concerning a particular action

. . .." Calvert Cliffs' Coordinating Comm., Inc. v. United States Atomic Energy Commission, 449 F.2d 1109, 1118 (D.C. Cir. July 23, 1971). On this record it does not appear that E.D.A. has ever considered the environmental consequences of its action. I do not believe that the impact statement prepared by the Forest Service after the grant of funds had been made satisfied the statutorily imposed duty of E.D.A. to consider the environmental consequences of its action to the "fullest possible extent."

I would reverse and remand with directions to vacate the E.D.A. offer of grant in order to permit E.D.A. to comply with the procedural safeguards set out in the statute before taking the major Federal action of granting funds for this project.