Adele **PROETTA** et al., Plaintiffs-
Appellants,

v.

Frederick **B.** DENT, as Secretary of Com-
merce, et al., Defendants-Appellees.

No. 357, Docket 73–2329.

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1973.

Decided Sept. 19, 1973.

Peter P. Smith, III, New York City, and Thomas A. Bruno, Staten Island, N. Y., for plaintiffs-appellants.

Sanford I. Freedman, New York City, for New York City appellees.

Joseph F. Seminara, New York City, for appellee S & S Corrugated Machinery Co., Inc.

George Weller, for federal appellees.

Before SMITH, MULLIGAN and OAKES, Circuit Judges.

OAKES, Circuit Judge:

In this, another National Environmental Policy Act (NEPA) case, appellants seek reversal of an order of the District Court entered September 13, 1973, denying their application made on September 5, 1973 for a preliminary injunction restraining appellees from "proceeding with any phase of the project for the expansion" of S & S Corrugated Paper Machinery Co., Inc. ("S & S"). The present phase of the project is the clearing of the site, which phase is being carried out by the City of New York pursuant to its power of condemnation and under its own financing.[1] The only federal involvement thus far has been the making of a loan commitment by the United States Economic Development Administration of the Department of Commerce (EDA) to S & S to finance a portion of the construction costs of its expanded plant. The terms of the loan commitment provide for repayment over 20 years at $6\frac{1}{4}\%$. There has been a tentative allocation of funds by EDA, but no funds have been disbursed nor will any be disbursed to the City or for the purpose of demolition. Appellants' primary prayer for relief is against the City to halt the demolition and clearing of the site, but included within the prayer is a request for a preliminary injunction against EDA also, prohibiting it from disbursing any funds to S & S.

Appellants' ground for the relief sought is that EDA did not file an environmental impact statement (EIS, under § 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), upon its making the loan commitment in May 1970. This commitment is claimed by appellants to have been a "major Federal action[s] significantly affecting the environment."[2]

1. The land on which appellants reside(d) was taken under an urban renewal project approved on December 4, 1969 by the Board of Estimate, the City acquiring title by condemnation (upheld in the New York courts) and obtaining an order of possession on January 31, 1973.

2. On argument Appellants also contended that even if EDA had filed an EIS in connection with the granting of the loan application it would have to file another on disbursement of the funds. This question we leave open as unnecessary for decision on the instant appeal.

Judge Bartels denied the request for a preliminary injunction as to the City because the City is not the recipient of a federal loan or a direct beneficiary of a "major Federal action." He denied it as to EDA, because, since it was not until January, 1973 that it became clear as a matter of law that the loan commitment here was a "major Federal action," EDA cannot on the balance of the equities be held to strict compliance with NEPA requirements and because appellants did not object to the lack of an EIS until September 7, 1973, they were guilty of laches.

The case comes before us at this time on an expedited basis, first because some of appellants have been evicted and their homes demolished, and others are threatened with eviction by the appellee City of New York;[3] second, because if the project site is not cleared by the October 4 deadline for the clearing of the site provided in S & S's contract with the City, appellee S & S has indicated that it will not continue with its expansion but will indeed leave Brooklyn, with the City losing hundreds of jobs accordingly.

■ We agree with the district court as to the denial of injunctive relief against the City. To be sure, there is authority for issuance of an injunction in a NEPA context against *recipients* of federal loans or financial assistance. Silva v. Romney, 473 F.2d 287, 289–290 (1st Cir. 1973) (developer restrained until HUD files EIS on basis that developer and HUD "in partnership" with each other on housing project). *Cf.* San Francisco Tomorrow v. Romney, 472 F.2d 1021 (9th Cir. 1973); Upper Pecos

Ass'n v. Stans, 452 F.2d 1233 (10th Cir. 1971), judgment vacated to consider mootness, Upper Pecos Ass'n v. Peterson, 409 U.S. 1021, 92 S.Ct. 2040, 32 L. Ed.2d 330 (1972). *But see* Ely v. Velde, 451 F.2d 1130 (4th Cir. 1971) (LEAA enjoined from prison grant, but state could proceed with construction plans). Here, however, S & S is the beneficiary of the loan, but not the City.

The appellants argue that the City is indirectly the beneficiary of the loan or at least in a sense in partnership with EDA because the project here was conditioned upon S & S obtaining "satisfactory private or governmental financing."

■ The question when a partnership or joint venture exists for the purpose of defining when someone beside the federal government is subject to an injunction under NEPA is a difficult one, as Judge Bartels said and as the First Circuit cases indicate. *Compare* City of Boston v. Volpe, 464 F.2d 254 (1st Cir. 1972) *with* Silva v. Romney, *supra.* We have found no case, however, which goes as far as suggested here. While not deciding whether a non-recipient of a loan may ever be in partnership with a federal government, upon the facts in this case we find that the nexus between the City and EDA is insufficiently proximate to warrant restraint of the former for lack of statutory compliance by the latter. The fact is that the expansion project could proceed independently of the EDA loan, were other private or governmental financing to be found, and the City's condemnation and possession of this site does not legally rely on the EDA loan commitment. There is no requirement, even at this date, that S & S

---

3. Of 96 affected families/residents, 70 have been paid by the City and removed themselves elsewhere; eight have been evicted and have had their homes demolished; and eighteen are still residing in the area, their eviction being stayed pending this appeal by representations of City Counsel. Those already evicted have been placed in interim housing pending the construction of replacement housing which has been firmly promised by the City. This interim housing has been found adequate and comparable to the demolished housing upon personal inspection by Mr. Justice Ventiera of the New York State Supreme Court in connection with the eviction proceedings.

take down the loan from EDA and, indeed, we were told in argument that the initial phase of construction will proceed without EDA funds. Therefore, insofar as the injunction prayed for against the City was denied, the order below is affirmed.

■ As regards the request that the federal defendants be preliminarily enjoined from disbursing funds to S & S, under law that is clear today the approval of the loan application was a "major federal action." *See* San Francisco Tomorrow v. Romney, *supra,* 472 F.2d at 1025. *See also* the EDA's own regulations, 13 CFR 309.18 (1973). Thus, there is a showing of probable success on the merits of the question whether or not an EIS is required at least by the time any construction is begun by S & S with the use of EDA funds. *Cf.* Upper Pecos Ass'n v. Stans, *supra,* 452 F.2d at 1236. But for purposes of the issuance of a preliminary injunction a showing of irreparable harm to those seeking it is also required. Gulf & Western Industries, Inc. v. Great Atlantic & Pac. Tea Co., Inc., 476 F.2d 687, 692 (2d Cir. 1973). Here there is no such showing, because any *irreparable* harm occurring to appellants is a result of the City's eviction. Any harm which may result to the environment of the Northside Community from the disbursal of funds for construction (as opposed to the City-sponsored and financed demolition) will not accrue until after a trial on the merits can in the ordinary course of events be held, since the probable time for such disbursal is 1974. An injunction pendente lite is therefore unnecessary, and while it was denied below on different grounds, the denial is affirmed, without prejudice to renewal in the event funds are disbursed or construction commenced without the filing of an EIS.

Judgment denying preliminary injunction affirmed.