541 F.2d 814
 9 ERC 1241, 6 Envtl. L. Rep. 20,659
 HOMEOWNERS EMERGENCY LIFE PROTECTION COMMITTEE, an
unincorporated association, Plaintiff-Appellant,
v.
James T. LYNN, Individually and as Secretary of Housing and
Urban Development, et al., Defendants-Appellees.
 No. 74-3301.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 12, 1976.
 
 Durwood J. Zaelke (argued), Washington, D. C., for plaintiff-appellant.
 Kenneth W. Downey, Asst. City Atty. (argued), Los Angeles, Cal., Larry G. Gutterridge (argued), of Appellate Section, Land & Resources Div., U. S. Dept. of Justice, Washington, D. C., for defendants-appellees.
 OPINION
 Before BROWNING and ELY, Circuit Judges, and SHARP,* District Judge.
 PER CURIAM:
 
 
 1
 This case involves a request for injunctive and declaratory relief as a result of alleged noncompliance with the environmental impact statement (EIS) requirements of § 102(2)(c) of the National Environmental Policy Act (NEPA), 42 U.S.C.A. § 4321 et seq. (1970). Appellant, an unincorporated association of homeowners and taxpayers, seeks to enjoin the construction of the Los Angeles Dam and Reservoir project by the City of Los Angeles on the basis that the project is a "major federal action," thereby requiring compliance with NEPA before any action can be undertaken which could significantly affect the environment. Further, due to an unusual turn of events resulting in the completion and submission of an EIS by the Department of Housing and Urban Development (HUD) and the Federal Disaster Assistance Administration (FDAA) during the pendency of this appeal, appellant, in additional briefing requested by the Court, raises the contention that the EIS as submitted is substantially inadequate and does not comply with NEPA.
 
 
 2
 The defense interposed by the city and federal appellees is that the activities of certain federal agencies investigating the feasibility of federal disaster relief funding for the construction of the dam do not constitute major federal action, and that the city's mere request for federal funding does not make the project federal within the meaning of NEPA. The city further argues that § 405 of the Federal Disaster Relief Act of 1974, which exempts the restoration of public facilities destroyed by major disasters from the requirements of NEPA, applies retroactively to the Los Angeles Dam and Reservoir project.
 
 BACKGROUND AND PROCEEDINGS
 
 3
 On February 9, 1971, an earthquake damaged the Van Norman Dam and Reservoir complex, which served an important function in the Los Angeles water system. As a result of the severe damage inflicted upon the complex, the Lower Van Norman Dam was removed from service and the Upper Van Norman Dam was forced to operate at a reduced level. Shortly after the earthquake, the damaged complex was declared a major disaster by the President pursuant to the Federal Disaster Relief Act of 1970, 42 U.S.C.A. § 4401 et seq. (the 1970 Act). Subsequently, Los Angeles submitted an application pursuant to the 1970 Act for disaster relief funds to assist in replacing the damaged Van Norman complex by construction of the Los Angeles Dam and Reservoir, on a site located between the former Van Norman Dams. In evaluating the city's application for funds, the Office of Emergency Preparedness, now a branch of FDAA, directed that the Army Corps of Engineers (Corps) and the United States Geological Survey (USGS) provide technical assistance to the FDAA. More particularly, those agencies were to investigate the proposed project to determine if it was in compliance with applicable state and federal regulations and to provide ongoing review of design and construction of any proposed project, advising the FDAA as to whether the project qualified for federal funding. In addition, the Corps and USGS were directed to prepare a comparative geologic and cost analysis of the Upper and Lower Van Norman Dam sites, and the proposed Los Angeles Dam site. During the course of these studies, officials of those agencies met with city officials and made copies of their studies available to the city. As a result, the city incorporated material from the studies into its own project proposals and designs in hope of qualifying for future federal funding.
 
 
 4
 In July of 1973, following an amended request for federal funds, the city was advised by FDAA that, although the Corps and USGS studies and recommendations were a matter of public record and could be incorporated by the city into its design, no federal agency had been instructed or authorized by FDAA to require that the city incorporate in its dam project any specific design criteria in order to qualify for federal funding. Further, the FDAA advised that the responsibility for safe design was still with the city. The city, however, continued its preparations for the dam project.
 
 
 5
 In February 1974 HUD notified the city that an EIS would be required before any federal funds could be granted for the dam project, and FDAA subsequently sent to the appropriate federal, state and local agencies and other interested parties, including appellant, a formal notice of intent to file an EIS. Shortly thereafter, the FDAA informed the city that at that time there had been no approval or commitment of federal funds, but that if the city commenced construction on its own accord, reimbursement would be possible in the event the project was ultimately approved for federal funding. The city was further advised by FDAA at a later date that, although it was free to commence construction solely as a locally funded project, it would be doing so at the risk of foreclosing alternatives otherwise acceptable to the federal government and, as a result, might preclude federal funding. The city, however, feeling it was in the best interests of the residents of Los Angeles to commence with construction of the dam, opened the project for bids, after submitting a satisfactory Environmental Impact Report (EIR) in accordance with the California Environmental Quality Act (CEQA), California Public Resources Code § 21000 et seq. In deciding to commence with construction on the project, the city indicated that if federal funding was not approved, it would proceed with the project, financing it with local water revenue bonds.
 
 
 6
 On October 10, 1974, the construction contract was awarded and appellant subsequently filed suit in the district court to enjoin construction. The district court entered judgment denying preliminary and permanent injunctions and finding, after extensive examination of the record, that the activity in issue was not a major federal action, or, in the alternative, that the Federal Disaster Relief Act of 1974 operated retroactively and exempted the subject activity from the requirements of NEPA. After unsuccessfully seeking an injunction pending appeal, appellant filed this appeal.
 
 
 7
 During the pendency of the appeal, construction has proceeded on the dam project. In addition, HUD and FDAA, the federal agencies responsible for processing the city's application for federal funds, submitted a completed EIS statement on January 12, 1976. As a result, on March 26, this Court ordered the parties to submit memoranda of law concerning the issue of mootness and also to advise the Court of any major funding decision made by the federal government concerning the project. Subsequently, the Court was informed that on or about May 18 a decision was made by the federal government to provide $33.2 million in federal funds to the city for the dam project. Of that sum, $25 million was delivered to the city and placed on deposit with a bank pursuant to an irrevocable one-year deposit agreement. Since, as mentioned supra, appellant raised the issue of the adequacy of the EIS in supplemental briefing, the Court, on May 26 and by supplemental order on June 2, stayed any action by the appellees with respect to the granting of federal funds or the expenditure of such funds for further construction of the dam project or reimbursement for construction already completed.
 
 
 8
 The filing of the EIS and subsequent grant of federal funds for the dam project during the pendency of this appeal has altered the complexion of this case. Initially, the issues presented on appeal were twofold: First, whether the district court erred in holding that the city appellees' application for federal funds and voluntary compliance with federal requirements in hope of securing such funds did not constitute "major federal action" within the meaning of NEPA and, as a consequence, did not require the filing of an EIS before construction could commence on the dam project. Second, whether the district court erred in holding that § 405 of the Federal Disaster Relief Act of 1974 applied retroactively to the subject earthquake disaster of February, 1971, thereby exempting the dam project from NEPA requirements.
 
 
 9
 Inasmuch as the grant of federal funds unquestionably moves the activity in issue to the point of a federal-city partnership, the project is now a major federal action. Scenic Rivers Association of Oklahoma v. Lynn,520 F.2d 240 (10th Cir. 1975), rev'd on other grounds, sub nom., Flint Ridge Development Company v. Scenic Rivers Association of Oklahoma, --- U.S. ----, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976); see Proetta v. Dent, 484 F.2d 1146 (2d Cir. 1973); Silva v. Romney, 473 F.2d 287 (1st Cir. 1973); San Francisco Tomorrow v. Romney, 472 F.2d 1021 (9th Cir. 1973); Boston v. Volpe, 464 F.2d 254 (1st Cir. 1972). As a result, it is unnecessary for this Court to determine whether the city appellees' request for federal funding and activities in connection with that request transformed the dam project into a major federal action. However, the issue as to whether § 405 of the 1974 Disaster Relief Act applies retroactively is still ripe for consideration, since a determination that the section is retroactive would exempt the project from NEPA requirements. Further, it appearing that the issue of the adequacy of the EIS submitted by HUD and FDAA has been raised in supplemental briefing requested by this Court, that question should be approached at this time. Finally, since appellant's challenge of the adequacy of the EIS is essentially a furtherance of its initial contention that the federal and city appellees should be enjoined from engaging in any further activity on the dam project pending satisfactory compliance with NEPA requirements, an issue exists as to whether continued construction should be enjoined pending a determination of the adequacy of the EIS.
 
 RETROACTIVITY OF § 405 OF THE 1974 ACT
 
 10
 The district court held, and the city appellees so argue, that § 405 of the 1974 Act (42 U.S.C.A. § 5175), which exempts the restoration of public facilities destroyed by a major disaster from the requirements of NEPA, applies retroactively to the construction of the Los Angeles Dam and Reservoir project. The Court disagrees.
 
 
 11
 In order for the exemption established in § 405 to apply, it must first be shown that the action taken or assistance provided is pursuant to the 1974 Act. Section 603 of the 1974 Act provides, in turn, that the Disaster Relief Act of 1970 is repealed, but "shall continue in effect with respect to any major disaster declared prior to the enactment of (the 1974) Act." The earthquake damage of the Los Angeles water system was declared a disaster in 1971. As a result, any disaster relief provided for the dam project would be pursuant to the 1970 and not the 1974 Act, thereby precluding application of the exemption to the dam project. Further, considering Congress' express language concerning the effective date of the 1974 Act, it is clear § 405 is not retroactive. The 1974 Act was passed May 22, 1974. Section 605 of the Act provides that except for § 408, which is unrelated to this action, the Act "shall take effect as of April 1, 1974." Other than § 408, which provides individual and family grant programs, there is no other retroactivity provision applying to other sections of the Act. In accordance with the customary rule of statutory construction, expressio unius est exclusio alterius, this would indicate that in expressly making only one section retroactive, Congress intended all other sections to be operative only from the effective date of the Act.
 
 
 12
 The city appellees' argument that NEPA never applied at all to disaster relief projects is without merit. City appellees make much of the fact that Congress did not discuss § 405 in the sparse legislative history of the 1974 Act, concluding that the lack of such discussion indicates Congress never intended NEPA to apply, even to disaster relief projects under the 1970 Act, and that § 405 is a mere codification of the prior law. On the contrary, regulations under the 1970 Act expressly direct the Regional Director of FDAA to determine whether projects involving federal disaster relief were major federal actions significantly affecting the quality of the environment and then to act accordingly in compliance with NEPA. 24 C.F.R. § 2200.11(a)(2)(vi). Further, regulations implementing § 405 of the 1974 Act provide that for non-exempt federal actions involving federal disaster assistance, that is to say, assistance provided pursuant to some authorization other than the 1974 Act, the Regional Director shall make the same determination regarding NEPA as he was required to do under the 1970 Act. 40 Fed.Reg., No. 103, May 28, 1975, at 23266. Since the 1974 Act does not apply, as mentioned supra, to disasters declared prior to April 1, 1974, but disaster relief in those cases is provided pursuant to the 1970 Act, it is apparent the NEPA requirements still apply to disasters occurring prior to the effective date of the 1974 Act.
 
 
 13
 As a result, without a clear indication from Congress that the 1974 Act should apply retroactively, its application is prospective only. Accordingly, the district court erred in holding that § 405 of the 1974 Act applied retroactively to the Los Angeles Dam and Reservoir project.
 
 ADEQUACY OF EIS
 
 14
 As mentioned supra, since this appeal was taken, HUD and FDAA have issued an EIS and granted federal funds for the dam project on the assumption that NEPA requirements have been satisfactorily fulfilled. Appellant, however, challenges the adequacy of the EIS and seeks injunctive relief pending submission of an "adequate" EIS. As noted by the Court in its order of June 2, 1976, the "filing of an EIS does not constitute compliance with NEPA unless the substance of the EIS meets the requirements of the statute." Here, appellant contends that the EIS is inadequate because it fails to consider all reasonable alternatives to the construction of the dam and reservoir. Further, the Council on Environmental Quality has stated that it finds nothing in the Disaster Relief Act "that would affect NEPA's requirement to consider all reasonable alternatives." Appellees have offered no convincing argument otherwise. As a result, to prevent completion of the project with federal funds without considering all reasonable alternatives, the Court has stayed the expenditures of such funds on the project pending a determination of the adequacy of the EIS. Recognizing that such a determination will entail further factual inquiry, properly within trial court jurisdiction, the adequacy issue is remanded for consideration by the district court. This Court's order of May 26, as supplemented June 2, 1976, staying disbursement of federal funds shall remain in effect until such time as a final decree is entered by the district court as to the adequacy of the EIS.
 
 
 15
 STAY OF CONSTRUCTION PENDING ADEQUACY DETERMINATION
 
 
 16
 Additional factors must be considered, however, in determining whether injunctive relief should issue against city appellees' continued construction of the dam itself. Initially, it can be said that an injunction in a NEPA context can issue against a nonfederal party who receives federal financial assistance in furtherance of the challenged activity. Poretta v. Dent, supra; see Friends of Earth v. Coleman, 518 F.2d 323 (9th Cir. 1975); Boston v. Volpe, supra; but see Ely v. Velde, 451 F.2d 1130 (4th Cir. 1971). However, although at this point it is clear the city, being in partnership with the federal government, is bound by the mandates of NEPA, it is not clear on the record before the Court that all the prerequisites for injunctive relief concerning the construction of the dam are satisfied. Although the district court initially made a factual inquiry when it first denied injunctive relief against the city, developments during the pendency of this appeal necessitate that the district court be given a new opportunity to consider whether the criteria for injunctive relief can be met. Accordingly, the question as to whether continued construction should be enjoined pending a determination of the adequacy issue is remanded for further consideration by the district court.
 
 
 17
 Judgment VACATED. Case REMANDED for proceedings not inconsistent with this Opinion.
 
 
 
 *
 Honorable Morell E. Sharp, United States Judge for the Western District of Washington, sitting by designation