473 So.2d 1352 (1985)
E.C. FOGG, III, Appellant,
v.
SOUTHEAST BANK, N.A., a National Banking Association, Appellee.
No. 84-1885.
District Court of Appeal of Florida, Fourth District.
July 17, 1985.
Rehearing Denied September 5, 1985.
*1353 Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Alan T. Dimond and Lawrence S. Gordon of Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for appellant.
D. Culver Smith, III, and Vance E. Salter of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for appellee.
HERSEY, Chief Judge.
Appellant, E.C. Fogg, III, appeals from a summary final judgment determining that the mortgage executed by him and in the process of foreclosure in this action is not subject to the forfeiture provisions of the balloon mortgage statute because of an exception added to the statute after the date of execution of the mortgage.
The promissory note and mortgage were executed on April 29, 1981. The note, in the original principal amount of $2,250,000, provided for principal payments of $200,000 each on May 1, 1982, and May 1, 1983, respectively, with quarterly payments of interest at a variable rate and with the balance of principal together with accrued interest due on May 1, 1984. Although the mortgage instrument purported to create a first priority position, it was eventually determined to be third in line behind two preexisting liens, so that it was not in fact a first mortgage. Because it did not have on its face the balloon mortgage legend required by the statute, the mortgage was in violation on the date of execution.
In 1983 the balloon mortgage statute, section 697.05(2)(a), Florida Statutes, was amended to exempt from its operation mortgages securing extensions of credit in excess of $500,000. Ch. 83-267, § 13, 7 Fla. Sess. Law Serv. 3107, 3119 (1983). Section 14 of the act stated that the amendment was to take effect upon becoming a law except that sections 6 and 7, dealing with information reports of certain corporations and amending section 199.062, Florida Statutes, were to operate from January 1, 1983, to July 1, 1983 (section 6), and July 1, 1983, and thereafter (section 7).
Generally, statutes operate only prospectively as they might otherwise impinge upon vested rights or create new liabilities. On the other hand, statutes relating to remedies or procedure and including forfeitures operate retrospectively in the sense that all pending proceedings, including matters on appeal, are determined under the law in effect at the time of decision rather than that in effect when the cause of action arose or some earlier time. *1354 In either event, whether the statutory change is substantive or procedural, a clear statement of legislative intent may, under appropriate circumstances, determine whether the amendment is to have retroactive effect.
The trial court, in holding that the amendatory act applied to this case, relied on Tel Service Co. v. General Capital Corporation, 227 So.2d 667 (Fla. 1969). In that case the act in question, section 687.11, Florida Statutes (1965), required the forfeiture of usurious interest charged a corporation. The act stated that it should take effect upon becoming law. The Florida Supreme Court said that an action based on the usury statutes is only an enforceable penalty and not a substantive right. "Accordingly, such penalty or forfeiture possesses no immunity against statutory repeal or modification and the enactment of legislation to this effect abates such penalty or forfeiture pro tanto even during the pendency of an appeal from a final judgment predicated on such statutory penalties or forfeiture." 227 So.2d at 671 (citations omitted). And in O'Neil v. Lorain National Bank, 369 So.2d 378 (Fla. 1st DCA 1979), the court likened the balloon mortgage statute, which provides for forfeiture of interest if violated, to the similar provision in the usury statute. See also Rothermel v. Florida Parole and Probation Commission, 441 So.2d 663, 664 (Fla. 1st DCA 1983) ("statutes which do not alter contractual or vested rights but relate only to remedies or procedure are not within the general rule against retrospective operation and, absent a saving clause, all pending proceedings are affected.")
The Tel Service case was cited with approval for the following holding: "The usury law to be applied by a court is the law in effect at the time the court renders it [sic] decision unless the act itself provides otherwise." U.P.C., Inc. v. Intercontinental Bank, 410 So.2d 554, 555 (Fla. 3d DCA 1982).
Appellant argues on the other hand that since only one section was given an earlier effective date, the legislature intended the remainder of the act to have prospective effect, citing Thayer v. State, 335 So.2d 815 (Fla. 1976), for support. In that case, the Florida Supreme Court considered the issue of whether a statute exempting certain restaurants from its provisions applied to restaurant licenses issued prior to the effective date of the statute. The court said:
It is, of course, a general principle of statutory construction that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius.
... .
The rule is stated succinctly in 30 Fla. Jur., Statutes, § 151, as follows:
"A statute operates prospectively unless the intent that it operate retrospectively is clearly expressed. Indeed, an act should never be construed retrospectively unless this was clearly the intention of the legislature. This is especially so where the effect of giving it a retroactive operation would be to interfere with an existing contract, destroy a vested right, or create a new liability in connection with a past transaction. The presumption is that it was intended to operate prospectively, unless its language requires that it be given a retroactive operation. The basis for retrospective interpretation must be unequivocal and leave no doubt as to the legislative intent."
335 So.2d at 817-18. See also Homeowners Emergency Life Protection Committee v. Lynn, 541 F.2d 814, 817 (9th Cir.1976) ("In accordance with the customary rule of statutory construction, expressio unius est exclusio alterius, this would indicate that in expressly making only one section retroactive, Congress intended all other sections to be operative only from the effective date of the Act"); State, Department of Revenue v. Zuckerman-Vernon Corporation, 354 So.2d 353, 358 (Fla. 1977) ("The 1977 Legislature's inclusion of an effective date of July 1, 1977, in Ch. 77-281 effectively rebuts any argument that retroactive application of the law was intended"); Anderson v. Anderson, 468 So.2d 528, 530 (Fla. 3d DCA 1985) ("even a clear legislative expression of retroactivity will *1355 be ignored by the courts if the statute impairs vested rights, creates new obligations, or imposes new penalties").
In a case involving a statute with a savings clause, Sailboat Apartment Corp. v. Chase Manhattan Mortgage and Realty Trust, 363 So.2d 564 (Fla. 3d DCA 1978), appellant executed a note in favor of appellee in March 1974. In June 1974, and then again in 1977, the usury statute (section 687.03, Florida Statutes) was amended. The appellate court held that since the action was based on the usury statute, appellant had no vested substantive right but only an enforceable penalty. Therefore, the penalty could be repealed or modified at any time before the proceedings became final. However, section 687.03(2)(b), Florida Statutes (1977), specifically stated that the act shall only apply to loans made subsequent to the effective date of the act. Therefore, the court concluded: "While it appears then that Section 687.03, Florida Statutes (1977) is controlling, that statute provides that it is to operate prospectively... . Therefore, under the holding in Tel Service Co., supra, Section 687.03(2), Florida Statutes (1975) is controlling." 363 So.2d at 567. The court applied the 1975 amendment to that case, even though it was enacted after the agreement was executed, indicating that if there is no savings clause, the statute in effect at the time of the court's decision controls.
For two reasons we conclude that the legislature did not express an intention that the amendment to the balloon mortgage statute be given prospective effect only. First, sections 6 and 7, which were given specific effective dates, did not relate in any way to the balloon mortgage statute but were inserted for a specific purpose having to do with an entirely different statute. Second, had the legislature intended prospective application, it could have (and should have) used language as in the Sailboat Apartment Corp. case to the effect that the provision in question shall apply only to loans made subsequent to the effective date of the act. This amendment was thus to take effect upon becoming a law. A statute which eliminates a penalty applies, from the moment it takes effect, to all pending proceedings. It was appropriately applied here.
Appellant further argues that the amendment is an ex post facto law which impairs his substantive property rights, because it caused him to be in default on the interest payments of his mortgage, allowing foreclosure. Also, he repeatedly states that when he withheld interest payments, he was relying on the law in effect at that time. However, the law in effect at that time did not allow a mortgagor to withhold payments of any kind simply because he thinks the mortgage is in violation of a statute.
The act in question did no more than exempt this mortgage from the penalty provision of section 697.05(4), Florida Statutes. Appellant in his reply brief says that the amendment placed him in default and exposed him to foreclosure. Actually, appellant placed himself in default and exposed himself to foreclosure. It was his own fault that he was adversely affected by the amendment, as he had no right to withhold interest payments. Appellant in effect fashioned his own remedy for what he thought was an unlawful mortgage. He should have first gone to court for a determination of the validity of the mortgage. If the mortgage had been found to be in violation of section 697.05(2), Florida Statutes, then the court would have ordered the proper remedy. Appellant will not now be heard to complain when his injury resulted from his own refusal to pay interest after having agreed in the promissory note and mortgage to pay interest and to repay principal.
In McNair v. Knott, 302 U.S. 369, 58 S.Ct. 245, 82 L.Ed. 307 (1937), the question was whether the National Bank Enabling Amendment of June 25, 1930, validated or made enforceable previous pledge agreements made to protect funds deposited before the amendment became effective. In that case, the receiver for a closed bank alleged that the pledge agreement was ultra vires and illegal, and that it could not be validated by changing the law in force *1356 when the pledge agreement was made. The Supreme Court disagreed and said:
There is nothing novel or extraordinary in the passage of laws by the federal government and the States ratifying, confirming, validating, or curing defective contracts. Such statutes, usually designated as "remedial," "curative," or "enabling," merely remove legal obstacles and permit parties to carry out their contracts according to their own desires and intentions. Such statutes have validated transactions that were previously illegal relating to mortgages, deeds, bonds, and other contracts. Placing the stamp of legality on a contract voluntarily and fairly entered into by parties for their mutual advantage takes nothing away from either of them.
... .
In this case, we hold that the security agreement  originally ultra vires  became enforceable from the date the amendment became effective.
302 U.S. at 372-74, 58 S.Ct. at 247-48 (footnote omitted).
Similarly, in the instant case the 1983 amendment cured the defective balloon mortgage by exempting it from penalty. Placing the stamp of legality on the mortgage, a contract which was created for the parties' mutual benefit took nothing away from either of them. The trial court therefore correctly applied the 1983 amendment to section 697.05, Florida Statutes, to this case. Since the mortgage secured an extension of credit in excess of $500,000, the trial court was correct in granting appellee's motion for summary judgment.
AFFIRMED.
ANSTEAD and HURLEY, JJ., concur.