**NATURAL RESOURCES DEFENSE COUNCIL, INC., et al.,**

v.

**TENNESSEE VALLEY AUTHORITY et al.,**

**Civ. A. No. 8062.**

United States District Court,
E. D. Tennessee, N. D.

July 24, 1973.

---

**130**

Charles D. Susano, Jr., Knoxville, Tenn., Richard M. Hall, New York City, William A. Butler, East Setaukey, N. Y., Stephen C. Cawood, Barbourville, Ky., for plaintiffs.

Robert Young, Robert H. Marquis, TVA Gen. Counsel, Thomas A. Pedersen, L. Gray Geddie, Jr., Knoxville, Tenn., Holliman, Langholz, Runnels & Dorwart, C. D. McDoulette, Jr., Tulsa, Okl., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

On May 21 through May 23, 1973, this Court heard the trial on this action on the merits. Because of the quantity of evidence introduced, postponement of any decision was made until after counsel submitted post-trial briefs.

Three issues remain for resolution. First, there is the question of whether all or some of the plaintiffs have waived their right to maintain this action by their failure to comment on TVA's draft statement. Secondly, this Court must pass on TVA's determination that individual impact statements for each term coal contract are unnecessary under Section 102 of NEPA and that a single program statement will fully comply with the Act. The final issue is whether the environmental impact statement issued on December 6, 1971 is adequate under Section 102 of NEPA.

It is TVA's position that plaintiffs have failed to exhaust their administrative remedies by failing to comment on the draft statement, and are, thus, barred from maintaining this action. Plaintiffs, besides denying that they have failed to exhaust what remedies were available to them, question the applicability of the doctrine to actions challenging agency compliance with NEPA.

In Sierra Club v. Froehlke, 359 F. Supp. 1289 (S.D.Tex.1973), the Court pointed out:

> "It is . . . unrealistic to assume that there will always be an intervenor with the information, energy and money required to challenge a staff recommendation which ignores environmental costs. NEPA establishes environmental protection as an integral part of the (agency's) basic mandate. The primary responsibility for fulfilling that mandate lies with the (agency). Its responsibility is not simply to sit back, like an umpire, and resolve adversary contentions at the hearing stage. Rather, it must itself take the initiative of considering environmental values at every distinct and comprehensive stage of the process beyond the staff's evaluation and recommendation." Citing Calvert Cliffs' Coordinating Committee v. Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1118–1119 (1971).

This view of the agency's responsibility under NEPA places upon the agency itself the primary duty of complying with the requirements of NEPA. Indeed, this Court doubts if there is a true administrative remedy available to private individuals under NEPA. There only exists the right to comment and express one's views, a right which a person always has. We are, therefore, of the opinion that the

exhaustion of the administrative remedies doctrine has no application under the facts of this case.

■ Many of the contentions raised by plaintiffs were in fact raised in the comments on the draft statement. This Court, therefore, has the benefit of TVA's judgment on these particular points. When neither the governmental agencies nor private organizations responding to the draft statement raise a particular point, which is now advanced by plaintiffs for the first time, the fact that previous comments were silent on the matter may be taken into consideration in passing upon the adequacy of the subject's treatment or omission from the final impact statement.

In our previous memorandum of April 17, 1973, 367 F.Supp. 122, we upheld the TVA Board of Directors' determination to file a single program statement, and rejected plaintiffs' claim that individual impact statements for each term coal contract were also required. Plaintiffs originally agreed for the Court to decide the case on the pleadings and affidavits and the existing record, but later requested an evidentiary hearing, which was granted.

The factual background surrounding this action was set forth in an earlier memorandum. In short, TVA in March of 1971 prepared and filed a draft environmental impact statement with the Council on Environmental Quality. Comments on this draft statement were received from various federal, state, and local agencies, as well as members of the general public. After all the responses had been received, they were printed in the final statement. TVA responded to and adopted some of the suggestions made to the draft statement. On December 6, 1971, the final statement was issued. In all, from initiation of research to issuance of final statement, the process took over six months.

The final environmental impact statement related to TVA's policy with regard to procuring coal. The Board of Directors had earlier determined that filing an impact statement for each individual coal contract was unnecessary and would conflict with Section 9(b) of the TVA Act requiring competitive bidding. The Board concluded that a single program statement with future supplements would satisfy Section 102 of NEPA.

■ Defendants move for affirmance of our previous holding. Plaintiffs contend that the administrative record is insufficient for judicial review of the issue. We do not agree. There is ample documentary evidence and oral testimony to support the Board's determination. NEPA does not require public hearings. Jicarrilla Apache Tribe v. Morton, 471 F.2d 1275 (9th Cir. 1972). Before the Court is the Board's resolution, the impact statement, and the testimony of Mr. Seeber. Plaintiffs introduced no evidence challenging the determination made by the Board. The basic facts remain virtually undisputed.

■ Although we find that filing individual impact statements for each term coal contract would conflict with Section 9(b) of the TVA Act, absent any conflict, this Court also concludes that the type of contracts under consideration and TVA regulations applicable thereto are within the recommendations or within the spirit of the recommendations set out by the Council of Environmental Quality applicable to when a single overall program statement suffices in lieu of individual impact statements.[1]

■■ Next, we must pass on the adequacy under Section 102(2)(C) of NEPA of the environmental impact statement filed by TVA entitled "Policies Relating to Sources of Coal used by the Tennessee Valley Authority for Electrical Power Generation." An impact statement must discuss, inter alia, the environmental impact of the proposed action or policy and the alternatives to the proposed action or policy. This Court summarized the purposes for a detailed environmental impact statement in

1. 102 Monitor Vol. 2, No. 5, pg. 18, June, 1972.

Environmental Defense Fund v. Tennessee Valley Authority, 339 F.Supp. 806, 810 (E.D. Tenn.1972), stating:

"The purpose of a section 102(2)(C) detailed environmental impact statement is (1) to aid the agency's decision-making process and (2) to advise the public of the environmental consequences of the proposed action. The requirement seeks to insure that each agency decision-maker has before him, and takes into proper account, all environmental impacts of a particular project. Only if this is done will the most intelligent, optionally beneficial decision be likely to result. Moreover, the detailed statement provides evidence that these factors have been taken into account. More importantly, it allows those removed from the decision-making process to evaluate and balance the factors on their own. In fact, 'if the decision was reached procedurally without individualized consideration and balancing of environmental factors—*conducted fully* and in good faith—it is the responsibility of the courts to reverse'. (Emphasis added) Calvert Cliffs v. A.E.C., [146 U.S.App.D.C. 33] 449 F.2d 1109 (1971)."

Plaintiffs contend the impact statement filed by TVA is inadequate in that it fails to discuss in detail the full environmental impact of TVA's policies. They also argue that the discussion in the statement of many reasonable alternatives to TVA's present policies are either general and conclusory, or totally non-existent. Plaintiffs caution that they are not raising in this action that NEPA requires the adoption of a particular alternative, only that there were many other reasonable alternatives worthy of discussion in the impact statement.

The impact statement under consideration is a policy statement as opposed to a statement dealing with a fixed project such as a dam. Basically, the policy set forth is that TVA will not accept coal from those areas of suppliers' property that cannot be successfully reclaimed.

Each coal operator must submit mining plans. In reviewing these plans, if TVA finds that because of factors such as slope, geology, proximity to streams, aesthetics, or other considerations an area is "unmineable," then TVA will not accept coal from them.

The policy statement contains the final environmental impact statement itself which is followed by ten appendixes. Appendix A contains TVA's 1971 Surface Mine Contract provisions which carry out TVA's basic policies which were outlined above. The remainder of the statement contains comments and responses by TVA, the draft statement, studies, and other miscellaneous material. In all, the statement is over 140 pages in length.

We are of the opinion and find that the statement in a concise and detailed manner adequately discusses the significant impacts of both deep and strip mining. This includes an adequate discussion of the harmful impacts from acid, mineralization, and silt on water quality, increased threats of floods, impacts on people, aesthetic, economic, health and safety hazards, and a multitude of other environmental impacts.

The statement contains sufficient scientific analysis and supporting documentation to evaluate the basis for TVA's conclusions. There is no requirement that an impact statement be replete with maps, charts, and other supporting data. Environmental Defense Fund v. Corp. of Eng. of U. S., 348 F.Supp. 916, 933 (E.D.Miss.1972). In Sierra Club v. Froehlke, 359 F.Supp. 289 (S.D.Tex. 1973), the Court stated:

"All features of an impact statement *must be 'written in language that is understandable to non-technical minds* and yet contain enough scientific reasoning to *alert specialists* to particular problems within the field of their expertise.' The reason for this standard is that impact statements must assist in rational, thoroughly informed decision making by officials higher up in the agency chain-of-com-

mand, including the Congress, the Executive and the general public, some of whom may not possess the technical expertise of those who evaluate the impact and prepare environmental statements." P. 1342–1343 (Emphasis Added)

█ Plaintiffs criticize the impact statement for its inadequate treatment of the various sociological impacts of strip mining. None of the governmental agencies commenting on the draft statement made mention of this alleged deficiency. Indeed, one of the plaintiffs herein failed in its comments on the draft statement to acquaint TVA with this inadequacy. Earlier this Court stated that when those commenting on the draft statement, especially governmental agencies with expertise in the area, fail to make reference to the need for further discussion of a particular subject, then it is reasonable to take this fact into consideration in passing upon any deficiency that is later alleged to exist in the treatment given the subject in the impact statement. Apart from this, proof at trial showed that to conduct various sociological studies would take years. This Court concludes that the treatment given by TVA in its impact statement on this topic was adequate under NEPA.

Plaintiffs complain that numerous alternatives to TVA's existing policy were inadequately dealt with in the impact statement—alternatives such as phasing out reliance on contour mine coal, phasing out all reliance on strip mined coal both area and contour, varying maximum slope restrictions at which mining is permissible, requiring other methods of contour-mining in all or certain areas, requiring other techniques for revegetation other than those adopted by TVA, variations in grading techniques, increasing the detail of pre-mine plans, increasing the inspection staff, and attempting to reduce the consumption of electricity by various methods including advertising campaigns.

█ NEPA only requires the discussion of reasonable alternatives. Sierra Club v. Froehlke, 359 F.Supp. 1289 (S.D.Tex.1973). In the opinion of the Court the impact statement adequately discusses those reasonable alternatives which were available to TVA at the time the impact statement was prepared.

From the testimony of Mr. Seeber, General Manager of TVA, and the statement itself, it is apparent that the alternative of completely phasing out the use of strip mining coal was unrealistic considering TVA's need for coal at competitive prices. As to those alternatives dealing with different mining techniques, the statement adequately discusses why other techniques are not presently available as alternatives.

█ One of plaintiffs' witnesses testified that the policy statement fails to discuss numerous alternatives, including reducing the maximum slope, returning the mined areas to original contour, separating the top soil, using other monitoring techniques, relying more on TVA coal reserves, using other mining techniques, etc. Although this witness commented on TVA's draft statement, he did not mention any of these alternatives in those comments. His comments are printed in the statement at page I–49 et seq., and TVA's response to his comments are printed at page J–15 of the statement. It is significant that none of the federal, state, or local agencies, which commented on the draft statement, suggested these ideas as possible alternatives. In these circumstances, the Court finds from all the evidence that these suggested alternatives were not required to be discussed.

█ Plaintiffs contend that the statement does not discuss the environmental costs and benefits. The subject, though not dealt with as a specific topic, permeates the entire document. The environmental costs are the adverse effects of strip mining generally, which are discussed in detail. The benefits are those which result from the use of electricity

in the home, factory, office, and on the farms, which are well known.

The nature of the topic of the policy statement is subject to considerable change due both to changes in circumstances and technology. In passing upon what are reasonable alternatives at a given time, this must be borne in mind. Other of plaintiffs' alternatives such as discouraging the use of electrical power through use of advertising campaigns or changing electrical power rates are certainly not the type of alternatives to invalidate a final impact statement. We conclude that TVA's final environmental impact statement is adequate under Section 102 of NEPA.

For the indicated reasons and those stated in the memorandum filed on April 17, 1973, and upon the cases cited in both memoranda, the relief sought by plaintiffs must be denied.

This memorandum will serve as findings of fact and conclusions of law as provided for by Rule 52 of the Federal Rules of Civil Procedure.