NATURAL RESOURCES DEFENSE
COUNCIL, INC., et al., Plaintiffs-
Appellants,

v.

TENNESSEE VALLEY AUTHORITY,
et al., Defendants-Appellees.

No. 74–1132.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1974.

Decided Aug. 29, 1974.

Richard M. Hall, Natural Resources Defense Counsel, New York City, for plaintiffs-appellants. Charles D. Susano, Jr., Bernstein, Dougherty & Susano, Knoxville, Tenn., William A. Butler, Washington, D. C., Stephen C. Cawood, Pineville, Ky., on brief.

Thomas A. Pederson, Atty., Knoxville, Tenn., for defendants-appellees. Robert H. Marquis, Gen. Counsel, L. Gray Geddie, Jr., Attys., Tennessee Valley Authority, Knoxville, Tenn., C. D. McDoulett, Jr., Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl., Robert S. Young, McCampbell, Young, Bartlett & Woolf, Knoxville, Tenn., on brief, for defendants-appellees.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

PER CURIAM.

This action was brought by three national and three local environmental groups challenging the adequacy of the Tennessee Valley Authority's environmental impact statement for its coal purchasing policy. In opinions published at 367 F.Supp. 122 (E.D.Tenn.1973), and 367 F.Supp. 128 (E.D.Tenn.1973), District Judge Robert L. Taylor held that the statement met the requirements of § 102(2)(C) of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4332(2)(C), and dismissed the complaint. We affirm.

For an extensive discussion of the facts of this case, reference is made to Judge Taylor's two opinions, *supra.*

The issue in this appeal is whether the TVA's environmental impact statement entitled "Policies Relating to Sources of Coal Used by the Tennessee Valley Authority for Electric Power Generation" complies with § 102(2)(C) of the NEPA, 42 U.S.C. § 4332(2)(C). That section provides that "all agencies of the Federal Government shall:

"(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

"(i) the environmental impact of the proposed action,

"(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) alternatives to the proposed action,

"(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

"(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

The crux of the question presented for review is whether the TVA's impact statement is "detailed" within the meaning of the Act. Appellants contend that the statement is general, conclusory and lacks detail with respect to: 1) specific mining sites, 2) the environmental impacts of mining, 3) the impact of mining on people, and 4) a discussion of reasonable alternatives to the TVA's policy.

The purpose of the NEPA impact statement was described in Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 833 (1972), as follows:

"Congress contemplated that the Impact Statement would constitute the environmental source material for the information of the Congress as well as the Executive, in connection with the making of relevant decisions, and would be available to enhance enlightenment of—and by—the public. The impact statement provides a basis for (a) evaluation of the benefits of the proposed project in light of its environmental risks, and (b) comparison of the net balance for the proposed project with the environmental risks presented by alternative courses of action." (Footnotes omitted.)

The statutory requirement of an impact statement "seeks to ensure that each agency decision maker has before him and takes into proper account all possible approaches to a particular project (including total abandonment of the project) which would alter the environmental impact and the cost-benefit balance. Only in this fashion is it likely that the most intelligent, optimally beneficial decision will ultimately be made. Moreover, by compelling a formal 'detailed statement' and a description of alternatives NEPA provides evidence that the mandated decision making process has in fact taken place and, most importantly, allows those removed from the initial process to evaluate and balance the factors on their own." Calvert Cliffs' Coordinating Committee, Inc. v. United States Atomic Energy Commission, 146 U.S.App.D.C. 33, 449 F.2d 1109, 1114 (D.C.Cir.1971), 17 A.L.R. Fed. 1.

Although the NEPA is an environmental full disclosure law, its interpretation is, nevertheless, tempered by a rule of reason. *See, e.g.,* Environmental Defense Fund, Inc. v. Corps of Engineers

of the United States Army, 492 F.2d 1123, 1131 (5th Cir. 1974); Environmental Defense Fund v. Tennessee Valley Authority, 492 F.2d 466, 468, n. 1 (6th Cir. 1974); Natural Resources Defense Council, Inc. v. Morton, *supra*, 458 F.2d at 834. "[I]t is entirely unreasonable to think that Congress intended for an impact statement to document every particle of knowledge that an agency might compile in considering the proposed action." *Environmental Defense Fund, Inc., supra*, 492 F.2d at 1136.

■ With these considerations in mind and upon thorough consideration of the briefs, the oral arguments of counsel and the record, we hold that the TVA's environmental impact statement comports with the requirements of the NEPA for the reasons set forth in Judge Taylor's two opinions, *supra*.

The following statement from Environmental Defense Fund v. Tennessee Valley Authority, *supra*, 492 F.2d at 468, n. 1, is equally applicable to the case at bar:

"Our examination of the final impact statement indicates that it is as thorough and complete on all pertinent features as could reasonably be expected. N.E.P.A., although rigorous in its requirements, does not require perfection, nor the impossible. In assessing the adequacy of such statement, practicability and reasonableness * * * are to be taken into account along with the broad purposes of the Act to preserve the values and amenities of the natural environment. This involves of course a balancing process which we think the district court correctly recognized and applied to this multi-purpose project, a project admittedly entailing considerable ecological damage and disturbance but many off-setting economic and social benefits. The specific objections of appellants to the final statement appear to us to be overly technical and hypercritical."

Affirmed.