520 F.2d 240
 8 ERC 1021, 5 Envtl. L. Rep. 20,536
 THE SCENIC RIVERS ASSOCIATION OF OKLAHOMA and the Illinois
River Conservation Council, Corporations,
plaintiffs-appellees,
v.
JAMES T. LYNN, Secretary of Housing and Urban Development,
and George K. Bernstein, Administrator of
Interstate Land Sales, Department of
Housing and Urban Development,
Defendants-Appellants,
and
Flint Ridge Development Company, Intervening Defendant-Appellant.
 Nos. 74-1520 and 74-1750.
 United States Court of Appeals, Tenth Circuit.
 July 30, 1975.
Certiorari Granted Dec. 8, 1975.
See 96 S.Ct. 444.
 
 Andrew T. Dalton, Jr. and James N. Khourie, Tulsa, Okl. (James Ikard, Oklahoma City, Okl., on the brief), for plaintiffs-appellees.
 Charles E. Biblowit, Atty. Dept. of Justice (Wallace H. Johnson , Asst. Atty. Gen., and Carl Strass and Dennis A. Dutterer, Attys. Dept. of Justice, on the brief), for defendants-appellants.
 Thomas C. Watson, Morgan, Lewis & Bockius, Washington, D.C., and F. Paul Thieman, Jr., Crowe & Thieman, Tulsa, Okl. (Edwin Kronfeld, Morgan, Lewis & Bockius, Washington, D.C., and Gordon B. Cecil, Crowe & Thieman, Tulsa, Okl., on the brief), for intervening defendant-appellant.
 Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is an appeal from an order, judgment and decree of the United States District Court for the Eastern District of Oklahoma in which the defendants-appellants were enjoined pending the preparation of an environmental impact study "of the effects of the Flint Ridge Development on the quality of the human environment" by the Secretary of Housing and Urban Development and Office of the Interstate Land Sales Registration, a division of the Department of Housing and Urban Development. The essential holding of the trial court was that the responsibilities of the Department of Housing and Urban Development were of such a nature as to require the preparation of an impact statement pursuant to the requirements of the National Environmental Policy Act, 42 U.S.C. Sec. 4331 et seq.
 
 
 2
 The action herein was filed on April 24, 1974 by the Scenic Rivers Association and the Illinois River Conservation Council. Named as defendants were Lynn, Secretary of the Department of Housing and Urban Development (HUD) and Bernstein, Administrator of the Office of Interstate Land Sales Registration (OILSR). In this suit a declaratory judgment was sought that HUD must conduct an environmental study and file an impact statement prior to its approval of a filing with the OILSR. Also sought was an injunction pending a determination in the case, together with the issuance of a mandatory order compelling the Secretary to comply with NEPA. In addition, plaintiffs sought a preliminary injunction requiring HUD to withdraw approval of the statement of record and property report which had been filed by Flint Ridge Development Company on February 5, 1974.
 
 
 3
 Flint Ridge was engaged in developing an area along the Illinois River in Oklahoma. In order to do so it was required to file certain documents under the Interstate Land Sales Act, 15 U.S.C. Sec. 1701 et seq. This is a prerequisite to the sale of lots in commerce. The original filing of Flint Ridge was determined to be inadequate and an amended statement of record was filed by Flint Ridge. This was effective as of May 2, 1974, that is, after the filing of the present lawsuit.
 
 
 4
 The order that is now being reviewed was issued following a hearing on preliminary injunction on July 31, 1974. Flint Ridge had been allowed to intervene and the hearing on injunction was merged with the hearing on the merits. Evidence was presented, and on August 2, 1974, the ruling from the bench which was later formalized in findings and opinion held that HUD was required to prepare an impact statement. The court further ordered that the Flint Ridge statement be suspended. Later, on September 4, 1974, the trial court filed its findings of fact and conclusions of law and an order. This enjoined HUD and OILSR from approving the Flint Ridge filing until an environmental impact study had been prepared and a hearing held thereon. The court ordered immediate withdrawal of the approval which had been given May 2 and ordered defendants-appellants to comply with the NEPA procedures.
 
 
 5
 The effect of the court's orders suspending the statement of record was that it forbade interstate sales until further order of the court. Unquestionably the development would have had a substantial impact on the environment inasmuch as the Illinois River is a state-designated scenic river. Three thousand lots were to have been sold. On each would have been a home with a septic tank for disposal of human refuse, which refuse would have contaminated the river. The trial court considered this fact in determining that the filing with HUD and OILSR was major federal action which would significantly affect the quality of the human environment.
 
 
 6
 The government agencies and Flint Ridge are the appellants in the present proceedings. They contend that the court erred:
 
 
 7
 1) In holding that the filing under the Interstate Land Sales Act constituted major federal action;
 
 
 8
 2) In ruling than an impact statement had to be prepared prior to the approval of a filing. the contention was here that to so read the National Environmental Policy Act is to create an irreconcilable conflict between NEPA and the Interstate Land Sales Act;
 
 
 9
 3) In requiring a public hearing;
 
 
 10
 4) In ruling that there was jurisdiction to consider the question as to whether NEPA limited the Interstate Land Sales Act and to enjoin the actions of HUD and OILSR in deference to the provisions of NEPA.I.
 
 
 11
 The first question is whether NEPA applies to the actions of the OILSR. The relevant provision of NEPA requires that "to the fullest extent possible" all agencies of the Federal Government impact statement for all "major Federal Actions significantly affecting the quality of the human environment."[1] The defendants-appellants take the position that review of the statements of record which are required to be filed under the Interstate Land Sales Act does not constitute major federal action. As we have above shown, the district court disagreed with this and enjoined OILSR from approving the statement of record until it had filed an impact statement. Therefore, the question boils down to whether the action on the part of OILSR constitutes a major federal action significantly affecting quality of the human environment. The argument is that the action is largely a private one involving as it does the filing of the statement, but it is more than that because OILSR does have the authority to suspend a statement, the effect of which is to cut off raising funds in interstate commerce which would be otherwise available. Thus, this allows the Federal Government to suspend a private action which would unquestionably affect the environment.
 
 
 12
 Our decision in Davis v. Morton, 469 F.2d 593 (10th Cir.1972) dealt with a matter which was very similar to that here presented. A 99-year lease of Indian lands was executed by the Pueblo of Tesuque. The lease was to the Sangre de Cristo Development Company, Inc. as lessee. The district court there held that the Secretary of the Interior was not required to file an impact statement prior to approval or disapproval of a lease between the Tribe and the developer. The trial court was impressed by the fact that the United States had not initiated the lease, was not a party, had no interest and the government action was limited to approval or disapproval. Our court reversed, holding that the Secretary's authority to ratify or reject leases on Indian lands would come within the terms of NEPA. The opinion quoted the broad purposes of NEPA as set forth in 42 U.S.C. Sec. 4331(b) as showing the intention of Congress to preserve the environment.[2] Cited with approval was Greene County Planning Board v. Federal Power Comm'n, 455 F.2d 412 (2d Cir.1972), holding that the granting of a license to construct a high voltage line constituted major federal action. Also relied on was Izaak Walton League of America v. Schlesinger, 337 F.Supp. 287 (D.D.C.1971), requiring the Atomic Energy Commission to prepare an environmental impact statement before issuing an interim operating license for a nuclear power plant.
 
 
 13
 The similarity between our case and Davis is that both involve filing and approval of private action. The result of approval here is that the developer is free to seek funds in commerce for the development. In each instance the filing is a preliminary step which is followed by substantial consequences to the environment; thus, there is action which leads to the development which in turn affects the human environment.
 
 
 14
 There are many cases which hold that the impact resulting from governmental funds is capable and significantly affecting the quality of the environment, a condition which is not far different from ours.[3]
 
 
 15
 It is true that funding could be obtained within the State of Oklahoma even without approval, but obviously the obtaining of funds interstate is important. If it were not important, Flint Ridge would not be litigating the present issue.
 
 
 16
 An analogy is shown in the case of the giving of a guarantee by HUD. This has a significant effect. See Sierra Club v. Lynn, 502 F.2d 43 (5th Cir.1974); Silva v. Lynn, 482 F.2d 1282 (1st Cir.1973). See, also, National Resources Defense Council, Inc. v. S.E.C., 389 F.Supp. 689 (D.D.C.1974) in which it was held that NEPA applies to S.E.C. offerings. The filing with the S.E.C. is not dissimilar to a filing under the Interstate Land Sales Act.
 
 
 17
 In sum, then, the consequences of the government's approval of the statement in terms of ease of obtaining funds and in terms of the ultimate direct consequences on the environment of the building of the houses lead to the conclusion that the district court was correct in holding that major federal action significantly affecting the quality of the human environment was present.
 
 II.
 
 18
 Appellants further maintain that the Interstate Land Sales Act is by its terms inconsistent with NEPA in that it requires that the statement of record filed by the land developer become effective 30 days after it is filed unless the agency acts to suspend it, whereas the NEPA procedure has a minimum requirement of 75 days. The argument goes that it is impossible for the Office of Interstate Land Sales to comply. We regard this as superficial. Clearly, Congress put the automatic 30 day provision in the Act out of concern about possible delay of agency action and in turn the interstate land sales. There is nothing in the statute, however, which prohibits the agency from suspending a statement of record pending the preparation and filing of an impact statement. The First Circuit has suggested that HUD promulgate regulations designed to preserve the status quo during the period of preparation of the impact statement. See Silva v. Romney, 473 F.2d 287 (1st Cir.1973). Thus, a developer could give advance notice to HUD of its intent to sell land in interstate commerce, whereby HUD could commence the preparation of its impact statement. There is evidence that Congress never intended for the 30 day provision to be absolute so as to exclude the applicability of NEPA; evidence the fact that it allowed the statement of record to be suspended.
 
 
 19
 The other argument advanced is that Congress showed its intention that the NEPA requirement was not applicable. This again loses sight of the fact that the NEPA impact statement requirement applies to virtually all federal agencies and is not limited to those that are concerned with the environment. One of its purposes is to require the giving of attention to environmental problems regardless of whether the agency has authority to do anything about it.[4]
 
 
 20
 The Supreme Court has held in one case that the ICC was not required to prepare an impact statement. See United States v. S.C.R.A.P., 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). The ICC had refused on a temporary basis to suspend a proposed rate increase. While it was determining whether the rate increase ought to be suspended permanently, the district court enjoined it from approving the rate increase as to recycled goods until it had filed a NEPA impact statement. By the terms of the statute, however, the rate suspension question was placed in the exclusive jurisdiction of the ICC during the seven month consideration period as to whether the rate should be suspended. The Supreme Court had so construed the statute in Arrow Transportation Co. v. Southern Ry. Co., 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963). The fact that the Supreme Court decided to review this case and thus regarded the question whether the ICC might have to file a NEPA statement shows the broad sweep and range of the NEPA requirement and demonstrates that it is not to be lightly disregarded. Certainly the presence of the 30-day requirement does not create inconsistency or an impediment to requiring the agency to prepare an impact statement.
 
 
 21
 Finally, it is readily apparent that these statutes, NEPA and Interstate Land Sales, are not incompatible. Both are designed to give information to the public, but in each instance it is a different kind of information. Rather than being inconsistent or incompatible they complement one another in furnishing the public with a full range of information.
 
 III.
 
 22
 Did the district court lack jurisdiction to hear and determine this matter as a federal question case? We have heretofore recognized that the district court is authorized to entertain a case such as this one arising under federal law. See National Helium Corp. v. Morton, 455 F.2d 650 (10th Cir.1971). We there held that the National Helium Corp. could challenge the termination of government contracts, which terminations were taking place without first observing the requirements of NEPA. In that instance also it was by way of an injunction. National Helium recognized that the underlying substantive federal question was the NEPA requirement. Also, our decision in Davis v. Morton, 469 F.2d 593 (10th Cir.1972) impliedly held that several kinds of federal violations gave rise to district court jurisdiction to compel the government agency to comply with the mandates of NEPA.
 
 
 23
 Flint Ridge maintains, however, that the Interstate Land Sales Act has a provision for review by the court of appeals and that this precludes district court action. This statute declares:
 
 
 24
 Any person, aggrieved by an order or determination of the Secretary issued after a hearing, may obtain a review of such order or determination in the court of appeals of the United States ... by filing in such court, within sixty days after the entry of such order or determination, a written petition praying that the order or determination of the Secretary be modified or be set aside in whole or in part ... Upon the filing of such petition, the jurisdiction of the court shall be exclusive....
 
 
 25
 15 U.S.C. Sec. 1710(a).
 
 
 26
 Thus, this Act provides for hearings on the request of a developer when the Secretary suspends the statement prior to its effective date for the purpose of obtaining additional information and, too, for review of an order of the Secretary when he wishes to suspend a statement of record already in effect. 15 U.S.C. Sec. 1706(b) and (d). Such hearings are public ones in which a record is made.
 
 
 27
 It is plain from a reading of the statute that this procedure does not apply here because the agency action for which review is provided was not here taken place and could not take place because it is entirely out of context with the present problem.
 
 
 28
 Nor does Anaconda v. Ruckelshaus, 482 F.2d 1301 (10th Cir.1973) apply. In Anaconda the effort was to bypass review by the appropriate court of appeals.
 
 
 29
 We have examined the other decision relied on, namely, Environmental Defense Fund v. Environmental Protection Agency, 158 U.S.App.D.C. 1, 485 F.2d 780 (1973). That one is also plainly inapplicable.
 
 
 30
 The Supreme Court's decision in S.C.R.A.P., supra, is entirely consistent with the position we take because there the effort was to interfere with the decision of an administrative tribunal which Congress and the Supreme Court had recognized was within the exclusive jurisdiction of the tribunal.
 
 
 31
 The case of Adolphus v. Zebelman, 486 F.2d 1323 (8th Cir.1973) has recognized that a district court has jurisdiction to enjoin a developer from making interstate land sales when its statement of record violates the Act.
 
 
 32
 Because, then, of the broad scale application of NEPA and the manifest intention of Congress that all federal agencies with responsibilities which affect the environment must observe its requirements, the jurisdiction of the district court is present.[5]
 
 IV.
 
 33
 Was the district court correct in its ruling that there should be a public hearing in connection with the environmental impact statement? We agree with HUD that the question whether a public hearing is to be held is within the agency's discretion. The statute does not prescribe that the hearing be either public or adversary. The courts have consistently held to this proposition.[6]
 
 
 34
 HUD's proposed regulations do not require public hearings in all cases, and the Proposed RUles Sec. 50.20 hold that the question whether a public hearing shall be held on a draft environmental impact statement is an administrative decision. This regulation outlines the factors to be considered: magnitude of the proposal, degree of interest, complexity of the issue and the extent to which public involvement has been achieved. The appellees contend that the Flint Ridge development meets all the criteria. As noted, however, this is an agency question. The present action is to compel compliance with the mandatory requirements of NEPA. Obviously the holding of a public hearing is not mandatory.
 
 
 35
 The judgment of the district court is affirmed in all respects except the requirement of a public hearing. That holding is reversed.
 
 
 
 [1]
 The relevant NEPA provision as read in context furnishes a better picture of its requirements:
 The Congress authorizes and directs that, to the fullest extent possible ... all agencies of the Federal Government shall ... include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on--
 (I) the environmental impact of the proposed action,
 (II) any adverse environmental effects which cannot be avoided should the proposal be implemented,
 (III) alternatives to the proposed action,
 (IV) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
 (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
 
 
 [2]
 The court said:
 [I]t is the continuing responsibility of the Federal Government to use all practicable means, consistent with other essential considerations of national policy, to ...
 (2) assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings; (3) attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences; (4) preserve important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice;.... 469 F.2d at 596.
 
 
 [3]
 See Proetta v. Dent, 484 F.2d 1146 (2d Cir.1973) (Economic Development Administration loan commitment to finance a portion of construction costs for expanding a private plant); Jones v. Lynn, 477 F.2d 885 (1st Cir.1973) (HUD loan and grant); Silva v. Romney,5i 473 F.2d 287 (1st Cir.1973) (HUD mortgage guarantee and interest grant for private housing project); San Francisco Tomorrow v. Romney, 472 F.2d 1021 (9th Cir.1973) (HUD loan and grant); Monroe County Conservation Counsel, Inc. v. Volpe, 472 F.2d 693 (2d Cir.1972) (Department of Transportation determination to fund highway); City of Boston v. Volpe, 464 F.2d 254 (1st Cir.1972) (Federal Aviation Agency funding for airport extension); Upper Pecos Ass'n v. Stans, 452 F.2d 1233 (10th Cir.1971), vacated and remanded on other grounds, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 330 (1972) (Economic Development Administration grant for construction of highway); Ely v. Velde, 451 F.2d 1130 (4th Cir.1971) (Law Enforcement Assistance Administration approval of funds for construction of rehabilitation center)
 
 
 [4]
 See Jones v. Lynn, 477 F.2d 885, 891 (1st Cir.1973); Monroe County Conservation Council, Inc. v. Volpe, 472 F.2d 693, 697 (2d Cir.1972); Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. 380, 463 F.2d 783, 787 (1971); Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 458 F.2d 827, 833 (1972); National Helium Corp. v. Morton, 455 F.2d 650 (10th Cir.1971)
 
 
 [5]
 We deem it unnecessary to discuss the issue of standing because it is not seriously contended that the plaintiffs here lacked standing to bring the suit
 
 
 [6]
 Jicarilla Apache Tribe v. Morton, 471 F.2d 1275 (9th Cir.1973); National Helium Corp. v. Morton, 455 F.2d 650 (10th Cir.1971); Natural Resources Defense Council, Inc. v. TVA, 367 F.SUpp. 128 (E.D.Tenn.1973), aff'd, 502 F.2d 852 (6th Cir.1974); Ford v. Train, 364 F.Supp. 227 (W.D.Wis.1973); Citizens for Clean Air, Inc. v. Corps of Engineers, U.S. Army, 356 F.Supp. 14 (S.D.N.Y.1973); City of New York v. United States, 344 F.Supp. 929 (E.D.N.Y.1972); San Francisco Tomorrow v. Romney, 342 F.Supp. 77 (N.D.Cal.1972), rev'd in part on other grounds, 472 F.2d 1021 (9th Cir.1973)