HOMEOWNERS ASSOCIATION OF SOUTHWEST JEFFERSON COUNTY, INC., et al., Plaintiffs,

v.

Douglas M. COSTLE et al., Defendants.

No. C 78–0030–L(B).

United States District Court,
W. D. Kentucky,
Louisville Division.

April 5, 1979.

Oscar H. Geralds, Jr., Lexington, Ky., for plaintiffs.

Ronald W. Crawford, Robert W. Keats, Laurel N. Anderson, Louisville, Ky., for Louisville & Jefferson County Metropolitan Sewer District.

Albert Jones, U. S. Atty., Barry L. Master, Asst. U. S. Atty., Louisville, Ky., Charles A. Perry, Asst. Regional Counsel, U. S. Environmental Protection Agency, Atlanta, Ga., Gerald H. Yamada, U. S. Environmental Protection Agency, Washington, D. C., for defendants.

MEMORANDUM

BALLANTINE, District Judge.

INTRODUCTION

This action was commenced by the plaintiffs seeking declaratory and injunctive relief. Plaintiffs are two individual property owners in Southwest Jefferson County and the Homeowners Association of Southwest Jefferson County, Inc.

The defendants are engaged in implementing the project known as "MSD Sewer Expansion Program and Southwest County Waste Water Treatment Plant." Plaintiffs' complaint seeks to have the Court enter a declaratory judgment that defendants have failed to comply with the National Environmental Policy Act of 1969, Title 42 U.S.C. Section 4321 et seq. Plaintiffs further seek to enjoin any further activity toward completion of the project.

The matter is now before the Court on the motion of the defendant, Metropolitan Sewer District (MSD), for summary judgment, and on the motion of the defendants Costle, White, and the United States Environmental Protection Agency (EPA) to dismiss or, in the alternative, for summary judgment.

I.

We will consider first the motion of MSD. MSD argues that the only claim asserted by the individual plaintiffs is that their property may be subject to condemnation. MSD relies on *Churchill Truck Lines, Inc. v. United States*, 533 F.2d 411 (8th Cir. 1976). The Court is of the opinion that MSD's position as to this part of its motion is sound.

In *Churchill Truck Lines* the Court held that a party could not establish standing to challenge a commission's actions by the bare allegation of economic injury. The Court said at page 416:

"Petitioners allege that the Commission's action should be set aside because the Commission failed to comply with the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. (1970). Section 4332(C) requires that the Commission issue an environmental impact statement whenever its decision involves a major federal action which would have a significant effect upon the quality of the human environment. Since it found that the grant of this application was not such a major federal action, the Commission did not issue an environmental impact statement.

\*     \*     \*     \*     \*     \*

To establish their standing to challenge the Commission's action, petitioners must satisfy two criteria. First, they must allege that the challenged action has caused them injury in fact, economic or otherwise. Second, the interest sought to be protected by the petitioner must arguably be within the zone of interest protected or regulated by the statute in question. (Citations omitted.)

Certainly an organization with genuine environmental concerns would be permitted to represent the public's interest in the environment and challenge the Commission's actions in an appropriate case. (Citations omitted.) No such organization has chosen to challenge the Commission's decision in this case.

Petitioners, whose sole motivation in this case was their own economic self-interest and welfare, are singularly inappropriate parties to be entrusted with the responsibility of asserting the public's environmental interest in proceedings concerning the issuance of operating authority to motor carriers (footnote omitted). Petitioners do not allege any environmental injury to themselves. Their interest in their economic well-being vis-a-vis their competitors is clearly not within the zone of interests to be protected by the National Environmental Policy Act. (Citations omitted.) This Act was not designed to prevent loss of profits but was intended to promote governmental awareness of and action concerning environmental problems."

It is apparent that, applying the rationale quoted above, individual defendants lack standing to maintain this action.

MSD's claim that the corporate defendant is not in fact a corporation has been resolved by the Court's Order granting plaintiffs leave to amend the complaint to assert the action in the proper name of the defendant. It is apparent that the original complaint contained a clerical error.

Plaintiffs complain that the federal defendants and, particularly, EPA, have not prepared an Environmental Impact Statement (EIS) as required by the Act.

■ The decision *vel non* to prepare an EIS is within the discretion of the agency. The Courts are without power to substitute their conception of how public and private interests are best served for that of the agency to which Congress has entrusted the final decision. In *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), the Supreme Court set forth the history of the Administrative Procedure Act, 5 U.S.C. Section 553, and while the Court said that there may be circumstances which will justify a court in overturning agency action, those circumstances, if they exist, are extremely rare. The Court said:

"Even apart from the Administrative Procedure Act this Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments. In *FCC v. Schreiber*, 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383 (1965), the Court explicated this principle, describing it as 'an outgrowth of the congressional determination that administrative agencies and administrators will be familiar with the industries which they regulate and will be in a better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved." 435 U.S. 524, 98 S.Ct. 1202.

Public hearings were held after the plan was announced and following these public hearings EPA determined that a limited EIS dealing only with the sewer lines in the West County Area and the service to the Riverport Industrial Park would be prepared. EPA issued a negative declaration as to the remainder of the Project.

■ The Court is without authority to substitute its judgment for that of EPA in making the determination to issue the negative declaration. In *Vermont Yankee, supra,* the Court said at page 1211:

"But this much is absolutely clear. Absent constitutional constraints or extremely compelling circumstances 'the administrative agencies "should be free to fashion their own rules of procedure and to pursue method of inquiry capable of permitting them to discharge their multitudinous duties." ' *Federal Communications Comm'n v. Schreiber,* 381 U.S. 279, 290, 85 S.Ct. 1459, 1467, 14 L.Ed.2d 383 (1965), quoting from *Federal Communications Comm'n v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940). Indeed, our cases could hardly be more explicit in this regard. The Court has, as we noted in *FCC v. Schreiber,* supra [381 U.S.], at 290 n. 17, 85 S.Ct., at 1467, upheld this principle in a variety of applications, (footnote omitted) including that case where the District Court, instead of inquiring into the validity of the FCC's exercise of its rulemaking authority, devised procedures to be followed by the agency on the basis of its conception of how the public and private interest involved could best be served. Examining § 4(j) of the Communications Act, the Court unanimously held that the Court of Appeals erred in upholding that action. And the basic reason for this decision was the Court of Appeals' serious departure from the very basic tenet of administrative law that agencies should be free to fashion their own rules of procedure.

We have continually repeated this theme through the years, most recently in *Federal Power Comm'n v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976), decided just two Terms ago. In that case, in determining the proper scope of judicial review of agency action under the Natural Gas Act, we held that while a court may have occasion to remand an agency decision because of the adequacy of the record, the agency should normally be allowed to 'exercise its administrative discretion in deciding how, in light of internal organization considerations, it may best proceed to develop the needed evidence and how its prior decision should be modified in light of such evidence as develops.' Id., at 333, 96 S.Ct., at 583. We went on to emphasize that:

'At least in the absence of substantial justification for doing otherwise, a reviewing court may not, after determining that additional evidence is requisite for adequate review, proceed by dictating to the agency the methods, procedures, and time dimension of the needed inquiry and ordering the results to be reported to the court without opportunity for further consideration on the basis of the new evidence by the agency. Such a procedure clearly runs the risk of "propel[ling] the court into the domain which Congress has set aside exclusively for the administrative agency." *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).' Id. [423 U.S.], at 333, 96 S.Ct., at 583."

Absent a showing of extremely compelling circumstances or any constitutional constraint, the Court should not and cannot alter the finding of EPA.

■ MSD, relying on EPA's negative declaration, except as to those portions of the Project mentioned above, argues that it may properly sever the West County sewer lines and the Riverport Industrial Park and go forward with the remainder of the Project. This is clearly within the discretion of the agency absent any arbitrary basis for its decision. *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976). In *Kleppe* the Court approved an EIS that did not encompass the entire region. The Court said:

"Respondents' basic argument is that one comprehensive statement on the Northern Great Plains is required because all coal-related activity in that region is 'programmatically,' 'geographically,' and 'environmentally' related. Both the alleged 'programmatic' relationship and the alleged 'geographic' relationship resolve, ultimately, into an argument that the region is proper for a comprehensive impact statement because the petitioners themselves have approached environmen-

tal study in this area on a regional basis. (Footnote omitted.) Respondents point primarily to the NGPRP, which they claim—and petitioners deny—focused on the region described in the complaint. (Footnote omitted.) The precise region of the NGPRP is unimportant, for its irrelevance to the delineation of an appropriate area for analysis in a comprehensive impact statement has been well stated by the Secretary:

'Resource studies [like the NGPRP] are one of many analytical tools employed by the Department to inform itself as to general resource availability, resource need and general environmental considerations so that it can intelligently determine the scope of environmental analysis and review specific actions it may take.

Simply put, resource studies are a prelude to informed agency planning, and provide the data base on which the Department may decide to take specific actions for which impact statements are prepared. The scope of environmental impact statements seldom coincide with that of a given resource study, since the statements evolve from specific proposals for federal action while the studies simply provide an educational backdrop.' Affidavits of Oct. 28, 1975, App. 191.

As for the alleged 'environmental' relationship, respondents contend that the coal-related projects 'will produce a wide variety of cumulative environmental impacts' throughout the Northern Great Plains region. They described them as follows: Diminished availability of water, air and water pollution, increases in population and industrial densities, and perhaps even climatic changes. Cumulative environmental impacts are, indeed, what require a comprehensive impact statement. But determination of the extent and effect of these factors, and particularly identification of the geographic area within which they may occur, is a task assigned to the special competency of the appropriate agencies. Petitioners dispute respondents' contentions that the interre-

lationship of environmental impacts is regionwide (footnote omitted) and, as respondents' own submissions indicate, petitioners appear to have determined that the appropriate scope of comprehensive statements should be based on basins, drainage areas, and other factors. See *supra*, at 2730–2731.

We cannot say that petitioners' choices are arbitrary. Even if environmental interrelationships could be shown conclusively to extend across basins and drainage areas, practical considerations of feasibility might well necessitate restricting the scope of comprehensive statements." 427 U.S. 412, 96 S.Ct. 2731.

MSD next contends that any other EIS claims are not ripe for adjudication at this time. The EIS has not been prepared on the limited portion of the Project and it would be premature at this time to determine whether it is inadequate.

MSD also argues that the plaintiffs' claim that the defendants have failed to obtain permits required by the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 et seq., is also not ripe for determination. Section 404 of the Act requires a permit from the Army Corps of Engineers before one may discharge dredge or fill material into navigable waters. MSD contends, and it is not denied, that it has not discharged any dredge or fill material in connection with the sewer project and until such a showing can be made there can be no controversy between plaintiffs and MSD. MSD adds that it has applied to the Corps of Engineers for a permit and until the Corps makes a determination whether to issue the permit there is no action or controversy pending before the Court.

MSD finally contends that the claim of the plaintiffs lacks equity. In view of the foregoing discussion, the Court does not reach this argument. The Court is of the opinion that the motion of MSD for summary judgment should be granted.

## II.

We turn next to the motions of the federal defendants. The thrust of their motions is substantially the same as that of MSD

discussed above. In their lengthy memorandum the federal defendants trace the 3-step grant actions by which construction of such facilities as the one at issue is accomplished. See 40 C.F.R. Section 35.-903(a). The step one procedures, Facilities Planning, are set forth in Section 35.917 and the content of the Facilities Planning is found in Section 35.917–1. In compliance with the directives of Section 35.917–1, the federal defendants have filed in the record an exhaustive summary of the Water Quality Management Plan which was prepared by Schimpeler-Corradino Associates. Without extending this memorandum to an unreasonable length, it may be said that the study is in compliance with the mandate of Section 35.917–1 (Exhibit 1 filed with the federal defendants memorandum).

On June 21, 1975, EPA issued a negative declaration. This declaration was based upon an environmental assessment which took into account the ecological environment, physical environmental quality, socioeconomic factors and aesthetics. It considered numerous alternatives both in Indiana and Kentucky. It considered in the most meticulous detail the four subdivisions in the environmental assessment.

The Court has considered the record in this case and finds that the actions of EPA comport with the Congressional mandate. As was written in *Mason County Medical Ass'n v. Knebel*, 563 F.2d 256 (6th Cir. 1978):

> "[I]t is . . . well established that although an agency must have taken 'a "hard look" at environmental consequences' this requirement is 'tempered by a practical "rule of reason." '" (Citations omitted.) As this Court stated in *Natural Resources Defense Council, Inc. v. TVA*, 502 F.2d 852, 853–54 (6th Cir. 1974):
>
> > Although the NEPA is an environmental full disclosure law, its interpretation is, nevertheless, tempered by a rule of reason. (Citations omitted.) '[I]t is entirely unreasonable to think that Congress intended for an impact statement to document every particle of knowledge that an agency might compile in considering the proposed action.' " 563 F.2d at 264.

The Court finds that the federal defendants have taken the "hard look" required and have fully complied with every statutory and regulatory requirement. The Court further finds that the reasoning set forth in the discussion of the claim against MSD above is equally applicable to the claim against the federal defendants, and the motion of the federal defendants for summary judgment will be granted and this action will be dismissed.

■ The Court has found that plaintiffs' claim that an Environmental Impact Statement as to the West County sewer lines and the Riverport Industrial Park is required is not ripe for adjudication. The Court has further found that the allegation that MSD has failed to obtain the permits required by Section 404 of the Federal Water Pollution Control Act, 33 U.S.C. Section 1251 et seq., is not ripe for adjudication. Therefore, the dismissal of those claims will be without prejudice.

An appropriate Order has been entered this date.