**COMO–FALCON COMMUNITY COALITION, INC., Appellant,**

v.

**UNITED STATES DEPARTMENT OF LABOR; Raymond Marshall, United States Secretary of Labor; Richard C. Gilliland, Regional Administrator, United States Department of Labor; Rudy Perpich, Governor of the State of Minnesota, Appellees.**

No. 79–1165.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1979.

Decided Nov. 19, 1979.

Ronald J. Riach, Franke, Riach & Franke, St. Paul, Minn., for appellant.

Carl Strass, Atty., App. Section, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., for appellees.

Warren R. Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., William P. Marshall, Sp. Asst. Atty. Gen., St. Paul, Minn., on brief, for appellee, Governor of the State of Minnesota.

Sanford Sagalkin, Acting Asst. Atty. Gen., Andrew W. Danielson, U. S. Atty., Francis X. Hermann, Asst. U. S. Atty., Minneapolis, Minn., and Jacques B. Gelin and Carl Strass, Attys., Dept. of Justice, Washington, D. C., and Howard L. Robinson, Atty., U. S. Dept. of Labor, Washington, D. C., on brief, for appellee, Federal.

Before LAY, ROSS and HENLEY, Circuit Judges.

LAY, Circuit Judge.

The fundamental issue presented is whether the district court, The Hon. Harry H. MacLaughlin, presiding, erred in holding that the establishment of a Job Corps center by the United States Department of Labor on the former campus of Bethel College in St. Paul, Minnesota did not require the filing of an environmental impact statement (EIS) under the National Environmental Policy Act of 1969, 42 U.S.C.A. §§ 4321–4369 (1979) (NEPA).

Como-Falcon Coalition, Incorporated, is a nonprofit corporation comprised of residents and owners of residential property living near the site where the Job Corps center is proposed. It urges that the establishment of the Job Corps center constitutes major federal action significantly affecting the quality of human environment and that the Department of Labor is required to file an appropriate impact statement. 42 U.S.C. § 4332. The Coalition presents several subsidiary questions on appeal: (1) Does NEPA require a public hearing prior to making the decision on the requirement of an EIS? (2) Did the district court err in denying pretrial discovery?[1] (3) Whether the district court's findings that the establishment of the Job Corps center did not significantly affect the quality of human environment are clearly erroneous.

On October 17, 1977, the Secretary of Labor informed then Governor Rudy Per-

---

1. In view of our finding that a plenary trial was not necessary, we need not pass on this question; nor do we need to pass on the Coalition's challenge that the agreement between the Governor and the Department of Labor is illegal and unenforcible. As the district court indicated this is not relevant to the present proceeding and even assuming plaintiffs have standing to raise the claim, which we question, no breach has yet occurred and the allegation, if true, remains for another forum another day.

pich of Minnesota of the Department of Labor's intent to establish a Job Corps center on the Bethel campus. Pursuant to 29 U.S.C. § 925(c) (1976),[2] the Governor was given thirty days in which to disapprove the project. A public meeting was held on October 20, 1977, before a representative of the regional office of the Department of Labor. At that time some neighborhood residents opposed locating the Job Corps center on the Bethel campus. Shortly thereafter the Mayor of St. Paul pledged his support for the project but two nearby municipalities, Roseville and Falcon Heights, adopted resolutions against the proposed center. The Governor sought and obtained an extension of time to study the proposal. Finally, on December 29, 1977, Governor Perpich conditionally approved establishment of the Job Corps center.

On February 1, 1978, plaintiff commenced this suit seeking injunctive relief on the ground that an EIS should have been issued. Originally Judge MacLaughlin granted a preliminary injunction. The court thereafter held a plenary trial and on December 11, 1978, dissolved the injunction, holding that although the Department of Labor's action constituted a major federal action, the determination that an EIS was not needed was reasonable because the evidence demonstrated there was no adverse environmental impact affecting the human environment. *Como-Falcon Coalition, Inc. v. United States Department of Labor*, 465 F.Supp. 850 (D.Minn.1978).

Upon granting a preliminary injunction, the district court required the Department of Labor to compile an administrative record on which it based its assessment that an EIS was not necessary. The Department also conducted a supplemental study and reassessment of the environmental impact of the proposed center. The court evaluated the administrative record and the plaintiff's counter evidence in terms of whether the reassessment was reasonable under the circumstances. *Minnesota Public Interest Research Group v. Butz*, 498 F.2d 1314, 1320 (8th Cir. 1974) (en banc). Plaintiff argues that the Department's failure to file an EIS was a violation of NEPA because the environment will be affected in numerous ways: (1) vehicular and pedestrian congestion, (2) impact on local utilities, (3) impact on commerce, social services, (4) contribution to criminal activity, (5) police and fire protection and (6) alteration of the character of the neighborhood. As indicated, the district court analyzed the evidence and concluded in a detailed opinion that the agency determination not to file an environmental impact statement was not unreasonable.

Before passing on the court's analysis, we turn to the Coalition's challenge that they were denied a public hearing and had no reasonable opportunity to present evidence to the Department of Labor before it concluded that an EIS was not necessary. The district court relying on *Hanly v. Kleindienst*, 471 F.2d 823, 835–36 (2d Cir. 1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973), impliedly held that some public hearing was necessary, but that the public meetings held by the Department of Labor in May and October 1977 were sufficient to comply with the procedural requirements established by the Second Circuit.[3] This court has never passed on the precise question of whether some procedural hear-

---

2. The Act was amended in 1978 and this proviso is now 29 U.S.C.A. § 937(c) (1979).

3. In *Hanly v. Kleindienst*, 471 F.2d 823 (2d Cir. 1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973), the court observed:

   [T]hat before a preliminary or threshold determination of significance is made the responsible agency must give notice to the public of the proposed major federal action and an opportunity to submit relevant facts which might bear upon the agency's threshold decision. . . . The precise procedural steps to be adopted are better left to the agency, which should be in a better position than the court to determine whether solution of the problems faced with respect to a specific major federal action can better be achieved through a hearing or by informal acceptance of relevant data.

   *Id.* at 836.

ing opportunities are mandated before an agency determines whether to file an EIS. Plaintiff cites no statutory or administrative authority requiring one. There is no question that an agency must make a good faith determination of whether an EIS is required. As we have indicated, that determination is subject to the court's review to see if it was reasonable under the circumstances. Whether the agency has exercised good faith discretion depends in part on the depth of study of the particular problem and whether the agency has considered all significant environmental effects as required by NEPA.

Sometimes it may be advisable for the agency to provide for public input and opinion through a public hearing and in weighing the reasonableness of the agency action the court may consider the opportunity of the public, through hearings or otherwise, to make their views known and to make input into the decision. But there is no statutory requirement that the agency provide such an opportunity, or an opportunity of a particular kind, and we are unwilling by judicial decision to legislate such a requirement into the Act.

In this case the Department of Labor gave to representatives of the property owners in the affected area an opportunity to express their views, and they did so. As stated by the court in *Jicarilla Apache Tribe of Indians v. Morton*, 471 F.2d 1275 (9th Cir. 1973):

> To hold in the abstract that meaningful public participation in the NEPA process cannot exist unless public hearings are held subsequent to the issuance of a draft environmental impact statement and prior to the preparation of the final document would be to substitute our judgment for that of Congress. It is true that the legislative history of NEPA indicates that the desire for a greater degree of responsiveness by administrative decision makers was one factor in the passage of NEPA. Despite this concern, however, there is no express provision in NEPA requiring administrative hearings as a procedural step in the preparation of

§ 102(2)(C) environmental impact statements.

*Id.* at 1286.

We find this language controlling here. *See also Scenic Rivers Ass'n v. Lynn*, 520 F.2d 240 (10th Cir. 1975), *rev'd on other grounds, sub nom. Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976); *Nucleus of Chicago Homeowners Ass'n v. Lynn*, 524 F.2d 225 (7th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976).

■ We move then to the more fundamental issue of whether under the facts presented, NEPA requires the preparation of an EIS. We have analyzed the entire record. We hold that the district court's finding, that the Department of Labor's reassessment of the environmental impact in establishing the center was reasonable, was not erroneous. Nonetheless, we vacate that portion of the district court's opinion concerning the evaluation of the Department of Labor's analysis. We hold the district court erred in requiring the reassessment. The social and economic factors raised by the Coalition's complaint are not encompassed within the provisions of NEPA, and under the circumstances of this case, need not have been considered by the Department in its determination of whether to file an EIS. We think the rule is well settled that:

> When an action will have a primary impact on the natural environment, secondary socio-economic effects may also be considered. *See, e. g., Hanly v. Mitchell*, 460 F.2d 640 (2d Cir.), *cert. denied*, 409 U.S. 990, 93 S.Ct. 313, 34 L.Ed.2d 256 (1972); Council on Environmental Quality Guidelines, 40 C.F.R. § 1500.8(a)(3)(ii) (1975). *But when the threshold requirement of a primary impact on the physical environment is missing, socio-economic effects are insufficient to trigger an agency's obligation to prepare an EIS.*

*Image of Greater San Antonio, Texas v. Brown*, 570 F.2d 517, 522 (5th Cir. 1978) (emphasis added) (citations omitted).

*See also Nucleus of Chicago Homeowners Ass'n v. Lynn,* 524 F.2d at 231; *Maryland-National Capital Park & Planning Comm'n v. United States Postal Serv.,* 159 U.S.App. D.C. 158, 487 F.2d 1029, 1037 (D.C. Cir. 1973); *First Nat'l Bank v. Richardson,* 484 F.2d 1369, 1380 n. 13 (7th Cir. 1973); *National Ass'n of Gov't Employees v. Rumsfeld,* 418 F.Supp. 1302, 1305–06 (E.D.Pa. 1976).

The court in *Nucleus of Chicago Homeowners Ass'n v. Lynn* dealt with a similar problem, and indicated that socio-economic complaints alone were not cognizable under NEPA. The court stated:

> The gravamen of plaintiffs' complaint is that low-income public housing tenants as a group statistically exhibit a high incidence of violence, law violation, and destruction of property and that HUD failed to consider the adverse impact of these social characteristics on the neighborhoods CHA has chosen for the construction of scattered-site housing. To the extent that this claim can be construed to mean that HUD must consider the fears of the neighbors of prospective public housing tenants, we seriously question whether such an impact is cognizable under NEPA. . . . We agree with the Court of Appeals for the District of Columbia that: "Concerned persons might fashion a claim supported by linguistics and etymology, that there is an impact from people pollution of 'environment,' if the term be stretched to its maximum. we think that type of effect cannot fairly be projected as having been within the contemplation of Congress." *Maryland-National Cap. PK. & PL. Com'n v. U. S. Postal Serv.,* 159 U.S.App. D.C. 158, 487 F.2d 1029, 1037 (1973).

*Id.* at 231 (citation omitted).

■ There can be no dispute in the present case that there will be no significant impact on the "human environment" as that term is defined under the Act resulting from the establishment of the Job Corps center on the Bethel campus. The plans are simply to renovate an existing educational facility and it will continue to be used to provide education. College stu-

dents will be replaced with disadvantaged youths who will undergo vocational training. As Judge MacLaughlin found:

> [L]ocation of the Job Corps center on the Bethel site will not substantially alter the character of the neighborhood. Bethel College and Seminary occupied the site in 1914, thus predating many of the neighboring residences. (Defs. Ex. 52, at 29, 75–79) No new construction has occurred on the campus since 1957. (*Id.* at 31) The Department of Labor does not propose construction of additional buildings or major alteration of the face of the campus. (Defs. Ex. 42, ¶ 3) It does intend to refurbish the existing buildings and to budget more funds for grounds maintenance than did Bethel College. (See, Defs. Ex. 30, at 2) The Court, therefore, cannot overturn the Department's judgment that use of the site as a Job Corps will substantially alter the character of the neighborhood.

*Como-Falcon Coalition, Inc. v. United States Dept. of Labor,* 465 F.Supp. at 866. We find that plaintiff's challenge relates solely to socio-economic conditions and that the Department of Labor's original finding that an EIS was not necessary was correct.

The judgment of the district court is affirmed, as modified.